**Judy Gail Graham STRICKLAND,
Plaintiff and Appellee,**

v.

**Chester Dejuan STRICKLAND,
Defendant and Appellant.**

**No. 17159.**

Supreme Court of South Dakota.

Argued Jan. 7, 1991.

Decided May 22, 1991.

**834**

Allen G. Nelson, Bang, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiff and appellee.

Linda Lea M. Viken, Finch, Viken, Viken & Pechota, Rapid City, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

This is a divorce action, commenced by Judy Gail Graham Strickland (Judy) against Chester DeJuan Strickland (DeJuan) on December 2, 1988. A trial was held on August 1 through August 4, 1989. Upon completion, the trial court signed Findings of Fact and Conclusions of Law, as well as Judgment and Decree, some seven months later, on March 6, 1990. On appeal, DeJuan raises the following issues:[1]

(1) The trial court erred in not granting the divorce to DeJuan Strickland;[2]

(2) The trial court failed to properly consider the premarital assets, gifts, and contributions of DeJuan Strickland, as well as the gifts received by him, during the marriage. Likewise, the trial court improperly included trust land when making the property division;

(3) The trial court failed to recognize the children's vested property rights;

(4) The trial court erred in including the children's interests in the "joint venture" as part of the marital assets;

(5) The trial court failed to consider the potential tax and criminal liability to the parties involved by the setting aside of the venture;

(6) The trial court failed to give proper allowance to the effect of the "conservation reserve program" on the real property;

(7) The trial court erred in its property valuations of certain property stipulated to and property which did not belong to the parties;

(8) The trial court erred in establishment of liability against the marital estate;

(9) The trial court erred in its grant of alimony;

(10) The trial court erred in dividing the "working unit";

(11) The trial court erred in granting $20,000.00 in attorney's fees for pre-appeal legal services to Judy.

Both parties have filed motions for appellate attorney's fees.

We affirm in part, reverse in part and remand.

## FACTS

On June 22, 1962, Judy and DeJuan were married in Plainview, Texas. They have three children. Over the years, both par-

---

1. Linda Lea M. Viken, counsel on appeal, did not represent DeJuan Strickland at the trial court level.

2. This issue is waived for failure to cite any supporting authority for this argument. SDCL 15–26A–60(6).

ties have had health problems. Judy was diagnosed as having cancer in 1984 and had surgery to remove the cancer. Presently, Judy has no indication of a reoccurrence of the cancer. However, it is not a given fact that she will be free of this disease during the rest of her life. As a result of Judy's cancer surgery, she is uninsurable. De-Juan did not desire—nor provide—insurance for Judy prior to her being stricken with this disease. DeJuan has received medical treatment for a heart irregularity that is being treated with medication.

– Property Facts –

We now address the complicated, extensive property facts of this marriage. When the parties were married, DeJuan had a net worth of approximately $80,000.[3] Judy owned an automobile with a value of approximately $300.00.

Shortly after the marriage took place, DeJuan's father helped him purchase an interest in G & S Grain Company in Texas. DeJuan later sold his interest in G & S to his father. DeJuan and Judy received approximately $7,500.00.

In March, 1963, Judy's parents were in a plane crash, with Judy's mother being killed. Judy received a $12,000.00 settlement from her mother's estate, certain household furniture, and an interest in Muncy Elevator. She subsequently sold her interest in Muncy Elevator for $20,-000.00. From this inheritance, a lot was purchased upon which a house was built. Judy's father contributed monies by making the house payment for approximately two years. Later, this residence in Plainview, Texas was sold. The profit, approximately $36,500.00, was used by DeJuan in his farming operation and to purchase land in South Dakota.

In December, 1979, DeJuan purchased nine sections of land in South Dakota from W.J. Asmussen for $1,728,000.00. Without consulting Judy, DeJuan assigned one section of this property to each of the parties' three children. He also prepared documents which stated that the debt of $21,-700.00 owed to his three children incurred

during the December 1979, transaction was forgiven by his children. The same document also stated that DeJuan and Judy are giving $18,000.00 to their children as of December 31, 1979, and further provided that an additional $17,900.00 was to be given equally to the children on January 1, 1980. However, *Judy did not sign any of the documents and did not agree to the transactions.* The forgiveness of the debt, as well as the two gifts of money, were necessary to provide the down payment money, so that on paper each of the children would be able to purchase the three sections of land, which DeJuan claims belong to the children.

Subsequently, in an attempt to put the Strickland family earnings into a lower tax bracket, DeJuan filed tax returns for his children and himself. These returns purported to show that DeJuan and each of his children were involved in the farming operation. Taxes were paid for each of the individuals. As a result of the documentation prepared, the three children and De-Juan were able to qualify for monetary payments from the United States Government, substantially in excess of what would have been available without the children being involved in the farming operation.

In 1986, in an attempt to qualify for additional monetary payments from the United States Government, the three children, DeJuan, and DeJuan's father purported to enter into a joint venture for farming purposes. After having the joint venture papers prepared, DeJuan and his children qualified for $50,000 in United States Government payments. DeJuan was also eligible to participate in the Conservation Reserve Program (CRP). However, DeJuan withdrew his prior approval to participate in the CRP for personal reasons.

The trial court critically, and very importantly, determined that DeJuan controlled and enjoyed the *beneficial use* of all of the before-mentioned property and all finances

---

**3.** This consisted of 320 acres of land described as the south half of Section 36, Township 1, Range 79, Sully County, South Dakota, and a half interest in the Strickland Corporation.

generated by this property, as well as the money received from the United States Government. This determination was made, notwithstanding many interlocking business associations.

After Judy decided to file for divorce, DeJuan, for the first time, decided to pay interest on the loans that he claimed to have with his children. About the same time, DeJuan's accounting records reflected that almost an identical amount was withdrawn from the children's checking accounts by way of a loan to DeJuan.

DeJuan did not show any debt to his children on any of his 1987 or 1988 financial statements. He first recognized debt to his children after Judy filed for divorce. The trial court also determined that DeJuan did not deliver any notes to his children nor did he place them in their possession.

After Judy filed for divorce, DeJuan provided Judy with a financial statement showing that DeJuan and Judy had approximately a $12,000.00 negative net worth. This is also what he told the trial court concerning his financial status. Considering the assets and liabilities, this testimony was incredible, the trial court deeming there were approximately 2½ million dollar net assets.

## DECISION

The issues will be condensed into three.

I. *The trial court did not err in determining the extent of the marital estate. However, it did err in its valuation of the marital estate.*

■ Initially, DeJuan argues that the trial court abused its discretion in failing to recognize and take into account, in the property division, the premarital assets and contributions of DeJuan's parents during the parties' marriage. This Court has consistently held that the trial court has discretion in determining how to consider premarital assets and gifts during a marriage. *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979). The trial court recognized various gifts and premarital assets that DeJuan claims the trial court should have excluded. However, in its discretion, the trial court deter-

mined that these items must be part of the marital estate to make the division equitable. We find no abuse of discretion.

■ DeJuan argues further that the trial court failed to recognize his children's vested property rights and erred by including his children's interests in the joint venture as part of the marital assets. The trial court found:

Based upon all of the evidence presented to this court, including the fact that there was never a legal delivery of any notes payable to the children, it is legally appropriate for this court to set aside any debt Defendant claims is owed to his children. In addition, it is equally legally appropriate for this court to specifically determine that Strickland Corporation and all assets owned by Strickland Corp.; DeJuan Strickland's, Michael Strickland's, Karen Strickland's and Deidi Strickland's ownership interest in Strickland Farms; as well as the real estate assigned to the children at or about the time of the Asmussen purchase, are all assets to be included within the marital estate of Plaintiff and Defendant, *all arising out of the equal and joint effort of both Plaintiff and Defendant.* (emphasis supplied).

Although the trial court did not specifically find that the before-mentioned transactions were fraudulent, the trial court did state that the transfers were improperly made. We believe this case can be reconciled with *Pennock v. Pennock,* 356 N.W.2d 913 (S.D.1984) for that very reason. It is certainly within the trial court's discretion to disregard such transfers when confronted with substantial evidence in the record. We do not believe it is appropriate to remand for further findings on this issue.

■ DeJuan continues his argument by stating that the trial court's setting aside of the joint venture will result in tax and potential criminal liability to all parties involved. He states that these issues should have been considered by the trial court. We are of the opinion that the trial court was very much aware of the tax conse-

quences of its determinations, which the record reflects:

Although Defendant presents a deferred income tax liability in the amount of One Hundred Forty–Four Thousand Six Hundred Forty–Six Dollars Twenty–Seven Cents ($147,646.27) in the Statement of Financial Condition for DeJuan and Judy Strickland; and a deferred income tax of Twenty–Five Thousand Nine Hundred Twenty–Three Dollars Sixty–One Cents ($25,923.61) in the Statement of Financial Condition for Strickland Corporation; Twenty–One Thousand Eight Hundred Twenty–Four Dollars Nineteen Cents ($21,824.19) in the Statement of Financial Condition for Michael Strickland; Twenty–Two Thousand Nine Dollars Seven Cents ($22,009.07) in the Statement of Financial Condition for Karen Strickland; and Twenty Thousand Seven Hundred Five Dollars Seventy–One Cents ($20,705.71) in the Statement of Financial Condition for Deidi Strickland, and evidence also establishes that there will be no deferred income tax incurred if any property is transferred in the overall setting of a divorce proceeding, or if it passes by will, or if there is no sale of the property.

Based upon this finding, we reject DeJuan's argument on this point.

■ Finally, DeJuan states that the trial court failed to give proper allowance to the effect of the CRP on the real property.

This is also erroneous. The trial court heard testimony from Don Douglas, a real estate broker, who took into account the impact of the CRP on the value of the land. It then considered conflicting testimony. However, the trial court adopted Don Douglas' values.

We review the trial court's valuation of the marital estate using the "clearly erroneous" standard. *Harvey v. Harvey*, 383 N.W.2d 862 (S.D.1986). This Court has previously held that exactitude is not required of the trial court in the valuation of assets in a dissolution proceeding; it is only necessary that the value arrived at be within a reasonable range of figures. *Studt v. Studt*, 443 N.W.2d 639 (S.D.1989). In the absence of a stipulation as to the value of marital assets, the parties must produce hard evidence as to those values other than their own personal opinions. *Hanks v. Hanks*, 296 N.W.2d 523 (S.D. 1980). The trial court, however, is not required to accept either party's proposed valuation. *Hanks*, 296 N.W.2d at 526.

In the present case, the record supports the trial court's findings with regard to certain assets. However, we do believe that error exists as to the stipulated value of the harvested wheat and the growing crops (sunflower and millet). Judy concedes both these errors in her brief. The trial court found the net value of the marital estate to be $2,488,579.00:

## ASSETS

| | |
|---|---|
| Cash in bank | $ 2,008.90 |
| Note receivable (Strickland Corp.) | 184.32 |
| Livestock (personally owned) | 960.00 |
| Land and improvements east of Onida (Asmussen purchase) | 1,339,982.00 |
| Land and improvements west of Onida (including grain bin site) | 1,254,180.00 |
| Equipment (personally owned as observed by Duane Chipman) | 101,600.00 |
| Residence in Onida, South Dakota | 47,000.00 |
| PCA Stock | 5.00 |
| Investment (River City Farms) | –0– |
| Investment (Strickland Farms) | 106,952.12 |
| Investment (Strickland Corp.) | 293,904.00 |
| Cash value of life insurance | 6,408.55 min. |
| Wheat harvested and on hand | 160,000.00 est. |
| Growing crops (sunflower & millet) | 49,632.00 |
| Cash picked up at ASCS Office shortly before August 1, 1989 | 20,000.00 |
| Cash that was available to be picked up at ASCS Office on August 1, 1989 | 17,000.00 |

| | |
|---|---:|
| CRP payment available October 1, 1989 | $ 97,912.00 |
| Storage payments to be paid by 10/31/89 | 34,257.59 |
| Deficiency payments to be paid—fall of 1989 | Undetermined |
| Disaster payment—fall of 1989 | Undetermined |
| TOTAL: | $3,531,986.00 |

## LIABILITIES

| | | |
|---|---|---:|
| 1. | Accrued interest payable | $ 66,219.00+ |
| 2. | Real estate tax payable | 23,600.00 |
| 3. | Federal income tax payable | 13,125.07 |
| 4. | Notes payable—PCA | 100.00 |
| | SBA | 416,323.84 |
| | FLB | 117,406.83 |
| 5. | W.J. Asmussen | 230,400.00 |
| | + Michael's share | 38,400.00 |
| | + Karen's share | 38,400.00 |
| | + Deidi's share | 38,400.00 |
| 6. | Notes payable—Michael Strickland | –0– |
| | Karen Strickland | –0– |
| | Deidi Strickland | –0– |
| | W.C. Strickland | 25,533.00 |
| | Muncy Elevator | 32,000.00+ int. |
| 7. | Hale County State Bank | 1,100.00 |
| 8. | Onida Bank | 1,400.00 |
| 9. | Repair of Plaintiff's Car | $ 1,000.00 |
| | TOTAL: | $1,043,407.00 |

---

The fair market value of the wheat that had been harvested was stipulated, by the parties, as being worth $99,376.00. This was acknowledged in Finding of Fact 45. However, the trial court stated in Finding of Fact 65 that the "wheat harvested and on hand was estimated at $160,000.00 and used that figure to compute the marital estate." As mentioned earlier, this is error.

We reverse and remand for further findings by the trial court on the valuation errors relating to the growing crops and harvested wheat. However, we cannot conclude that a 39%/61% percent division, under the circumstances of the case, was an abuse of discretion.

II. *The trial court did not abuse its discretion by awarding Judy alimony of $1,000.00 per month and in its division of the marital estate.*

▮ A trial court has broad discretion in awarding alimony and making a property division, and its judgment will not be set aside unless it clearly appears that it abused its discretion. *Tate v. Tate*, 394 N.W.2d 309 (S.D.1986); *Goehry v. Goehry*, 354 N.W.2d 192 (S.D.1984). Factors to be considered in determining the amount of alimony are: (1) the length of the marriage; (2) the parties' respective earning capacities; (3) their respective financial condition; (4) their respective age, health, and physical condition; (5) their station in life and the relative fault of the parties. *Booth v. Booth*, 354 N.W.2d 924 (S.D.1984). Factors to be considered in dividing marital property are similar to those used in determining alimony, except the trial court must also take into account the value and income producing capacity of the property and the contribution of each party to the accumulation of the property. *Garnos v. Garnos*, 376 N.W.2d 571 (S.D.1985). To determine if the trial court abused its discretion, we review the award of alimony and property division together. *Studt v. Studt*, 443 N.W.2d 639 (S.D.1989).

■ Here, the trial court considered the aforementioned factors. We hold the findings are not clearly erroneous. *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). The parties have been married for 26 years. For both, it is a first marriage. DeJuan has the mental, economic, and physical ability to provide for himself and his family. However, Judy is not so fortunate. She has devoted her life to raising her children and has no job skills or education to produce a substantial amount of income.

The respective age, health and physical conditions of DeJuan and Judy was also considered by the trial court. Judy is unable to obtain health insurance due to previous cancer surgery. The trial court also considered the parties' station in life, finding that during the marriage, Judy enjoyed a social status appropriate to the size of the family business and the money needed to sustain it.

Finally, the trial court found that DeJuan's fault was sufficient to authorize an award of alimony. The trial court was presented with evidence of a liaison with a nurse while he was at the University of Minnesota for prostate surgery. The trial court was also presented with evidence of DeJuan's attempts to seduce a friend of his youngest daughter. In short, he was a "womanizer" over an extended period of time.

■ We are confronted with a record establishing that the trial court exercised its discretion by considering proper reasoning behind its decision. We find no abuse of discretion in awarding Judy $1,000.00 per month in alimony, thus deferring to the trial court's judgment. DeJuan has the ability to pay this alimony and ought to pay it. While the parties were married, their farming business thrived. Judy was a major contributor to the success of their farming enterprise. She was in charge of the house, ran the household allowance, cooked the meals, raised the children and also worked in the fields.

■ Similarly, the trial court did not abuse its discretion in dividing the marital property. In making an equitable division

of property, the trial court is not bound by any mathematical formula, but is to make the award on the basis of the material factors in the case, having due regard to equity and the circumstances of the parties. *Garnos, supra.* This Court has, for several years, acknowledged that the performance by a housewife and mother of typically domestic duties constitutes a valuable contribution to the accumulation of the marital property. *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978).

■ In the present case, we believe the trial court did not abuse its discretion in the division of property. Judy received 39% of the value of the marital estate including $971,968.00 worth of bare land, the Onida house valued at $47,000.00, her automobile worth $5,000.00, her clothing, personal effects and jewelry and personal property that both parties agreed should go to Judy. Based upon values furnished to this Court, the division of property does not seem unreasonable. The parties have been married 26 years. In their own way, each has worked very hard. Although it is true DeJuan has the burden of a large debt, he also has very substantial assets to cope with that debt. Further, he has many working years ahead of him. We find no abuse of the trial court's discretion in the division of property.

III. *The trial court did not abuse its discretion by ordering DeJuan to pay Judy's $20,000.00 in attorney's fees.*

■ The trial court may allow attorney's fees to a wife in a divorce action where the allowance of the same before or after judgment shall seem warranted and necessary to the court. SDCL 15–17–7; *Wallahan v. Wallahan*, 284 N.W.2d 21 (S.D.1979). The allowance of attorneys' fees rests in the sound discretion of the trial court and will not be interfered with by this Court unless it appears that there is error in the exercise of that discretion. *Pochop v. Pochop*, 89 S.D. 466, 233 N.W.2d 806 (1975).

■ In determining the portion that should be paid by the husband, the trial

court should consider the property owned by each party, their relative incomes, whether the wife's property is in liquid or fixed assets, whether the actions of the wife or of the husband reasonably increased the time spent on the case. *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979).

The trial court described its process of analysis in determining the fees to be paid:

> Considering the property owned by each party, the relative past income and earning potential of each party and also the fact that the time and expense of the litigation was unnecessarily increased by the Defendant's intractable and unreasonable stand relative to property division, this Court finds that Twenty Thousand Dollars ($20,000.00) of the Plaintiff's litigation expense should be assessed as costs and borne by the Defendant.

 The trial court examined the parties' respective financial conditions, their income and financial responsibilities before reaching its conclusion. In these circumstances, we cannot say the trial court abused its discretion in awarding $20,000.00 in attorney's fees to Judy.

Both parties moved this Court for an Order granting attorney's fees and costs for their respective appeals. SDCL 15–17–7 provides for the allowance of attorney's fees before and after judgment in all cases of divorce. As previously mentioned, the factors considered in awarding appellate attorney's fees in a case such as this are: "The property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case." *Senger v. Senger,* 308 N.W.2d 395 (S.D.1981). After consideration of these factors, this Court awards Judy $8,000.00. That is roughly one-half of the $16,335.80 in total costs incurred by Judy defending this appeal.

Affirmed in part, reversed in part and remanded.

MILLER, C.J., WUEST and SABERS, JJ., and HERTZ, Acting J., concur.

AMUNDSON, J., not having been a member of the court at the time this case was argued, did not participate.