1996 SD 32

Nancy Lou HECKENLAIBLE,
Plaintiff and Appellee,

v.

Galen L. HECKENLAIBLE, Defendant
and Appellant.

No. 19153.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1995.

Decided March 27, 1996.

John M. Wilka of Christenson, Wilka, Haugen & Kirby, P.C., Sioux Falls, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1] Galen L. Heckenlaible (Galen) appeals from a judgment and decree of divorce challenging the valuation and division of property, the award of alimony, and the award of $2,500 in attorney fees to his former wife Nancy Lou Heckenlaible (Nancy). We affirm in part, reverse in part, and remand.

## FACTS

[¶ 2] Galen and Nancy were married 26 years. During that time they had three children, the youngest of whom was 17 years old at the time of the divorce. During the marriage, the parties lived on a dairy farm belonging to Galen's parents. Galen worked with his father in the dairy while Nancy assumed the traditional role of homemaker, mother, and farm wife. In 1976, the parties moved to Menno to pursue non-farm occupations. At that time, Nancy began working outside of the home as a teacher's aid and at the local Dairy Bar in Menno. She continues to work at these jobs, and earns a gross monthly income of $689.92. Nancy is in her mid-forties and, although she suffers from high blood pressure, it does not interfere with her ability to work.

[¶ 3] Galen is also in his mid-forties. He has worked on his father's milking farm most of his life. He suffers from osteoporosis and heart problems, but they do not interfere with his work. He receives Social Security Disability Income of $923.00 per month. He also receives income in the form of farm program payments and proceeds from the sale of milk (milk checks). In 1993, Galen purchased his parents' interest in the family dairy business. In December, 1993, Galen's parents gifted over 80 acres of farmland and buildings to Galen and Nancy as joint tenants. In July, 1994, Nancy filed for divorce.

[¶ 4] The trial court divided the marital property and, in so doing, included the 80 acres from Galen's parents and the value of milk checks he had collected from July, 1994 through November, 1994, the date of trial.

Wanda Howey–Fox of Harmelink & Fox, Yankton, for plaintiff and appellee.

The court also awarded Nancy alimony of $350 per month. Galen appeals.

## ISSUES

**[¶ 5] I. Does the valuation of property evidence an abuse of discretion?**

[¶ 6] Galen contends it was error to include as marital property the gift from his parents of 80 acres of farmland and buildings and the value of the milk checks for July through November, 1994 which he had expended in the dairy operation. We review such claims against an abuse of discretion standard. *Grode v. Grode*, 1996 SD 15, ¶ 9, 543 N.W.2d 795; *Osman v. Keating–Osman*, 521 N.W.2d 655, 659 (S.D.1994). We will consider each item in turn.

[¶ 7] Galen contends the farmland is inherited property, not subject to division as part of the marital estate. He relies on *Voelker v. Voelker*, 520 N.W.2d 903 (S.D. 1994), in which the husband inherited 160 acres of farmland, and received the land after the action for divorce had been commenced but before it had been completed. In *Voelker*, we held that the wife was not entitled to an interest in the inherited land because she had no involvement with the land and had not contributed to its acquisition, whereas the husband had worked the land with his father throughout his life. 520 N.W.2d at 908.

[¶ 8] As the trial court pointed out, however, this case is different. Despite Galen's attempts to characterize the transfer from his parents as an "inheritance," it was a gift made jointly to Galen and Nancy during the marriage, and his parents are both alive. The court found: "The fact that the deed dated December 28, 1993 conveys the real estate to both [Nancy] and [Galen] [husband and wife, as joint tenants] is convincing evidence of its status as marital property." The trial court has broad discretion in determining whether property is marital in nature and subject to division. *Voelker*, 520 N.W.2d at 907. Further, even if the land could be considered an "inheritance," the trial court had the authority to treat it as part of the marital estate. *Id.* No abuse of discretion has been demonstrated here.

[¶ 9] Next, Galen argues that it was an abuse of discretion to include the five months of milk checks as divisible marital property because they are his source of income. The court included the proceeds of the milk checks from July through November of 1994, totalling over $11,000 in the calculation of the marital estate. Both Galen and Nancy testified that during the marriage the proceeds from the milk checks were used for living expenses and farming expenses. Checks for the sale of milk were received on the 1st and 15th of each month, and ranged from $1,000 to over $3,000. Galen gave Nancy $500 from each check (a total of $1,000 per month) to pay household expenses. This amount was deposited into the family's personal account for living expenses, as was Galen's disability income and Nancy's income from the two jobs she worked. The balance of the milk checks was deposited into a separately maintained farm account which was used to pay the operating expenses of the dairy and to purchase equipment and livestock.

[¶ 10] The evidence was uncontroverted that the balance was used by Galen in the dairy operation.[1] Throughout the marriage, the parties treated the milk checks as income of the dairy operation, using the monies to pay operating expenses of the dairy, purchase equipment, livestock and feed. The facts support a conclusion that—with the exception of $1,000 per month—the milk checks

---

1. Most, but not all, of this money was spent by Galen on regular operating expenses of the dairy, purchases of equipment, and acquisition of livestock for his dairy herd. He did make one alimony payment of $350, and a separate payment of $1,100 to his live-in girlfriend from the farm account. Clearly he did not deposit any portion of the milk checks into a personal account to pay himself a salary or living expenses. However, he did admit on cross-examination that during the pendency of the action he contacted the buyer of milk and directed that the milk checks be paid to his mother. As a result of this scheme, seven checks came to his mother in her name, which were subsequently transferred to Galen and eventually into the farm account. Although he failed to account for over $3,000 of milk checks he received during this time period, Nancy was successful in proving that he had received at least $11,392.

have always been treated separately as part of the dairy operation. On that basis, it was proper for the trial court to treat the dairy's income as a component of the dairy operation, the value of which is an asset subject to division.

[¶ 11] Under the circumstances, a portion of the proceeds of the milk checks is property and a portion is income. To the extent Galen regularly paid himself a salary of $1,000 per month from the operation, he should be allowed to claim as personal income that amount he regularly paid into the family's personal account for living expenses. However, the balance of the proceeds which was maintained separately for the dairy operations and used only for the dairy, was properly treated as a divisible asset. Of the $11,392 in milk checks received over the 5 months, $1,000 per month (a total of $5,000) represents Galen's farming income and the balance of $6,392 was subject to the property division. Consequently, on this limited issue, we remand the property division.

[¶ 12] **II. Does the award of alimony evidence an abuse of discretion?**

[¶ 13] Galen also contends that Nancy was not entitled to an award of $350 per month of permanent alimony. He claims he lacks the ability to pay such an award because his monthly income is only $554.79 and that his health prevents him from ever being able to meet such an obligation. Trial courts are guided by the well-established factors to be used in making an alimony award, and we will not disturb such an award absent an abuse of discretion. *Jones v. Jones*, 1996 SD 2, ¶ 21, 542 N.W.2d 119.[2]

[¶ 14] Galen attempts to argue both sides of the income issue. In his first issue, he claimed the milk checks were entirely personal income, but now he claims he has no income at all aside from his disability income. He goes on to claim that his disability income at the time of trial was substantially less than the $923 amount he listed in his answers

to interrogatories signed that same month (November, 1994). He claims he only has an income of $554.79 (after deducting payment of $117 in child support from disability income of $661.79). The $661.79 figure was used by the court as Galen's net income for purposes of child support calculation, after taking the statutorily allowed deductions.

[¶ 15] The court's decision does not express an analysis of Galen's ability to pay $350 per month in alimony. It does not state whether it considered his income in the restrictive sense of the child support calculation or the broader sense which included income from the dairy operation. The court was required to consider the financial situation of the parties after the property division and the earning capacity of each, and the record plainly shows it did so. Galen's argument that it must make a specific finding that he has the ability to pay is not supported by *Parsons v. Parsons*, 490 N.W.2d 733 (S.D.1992) (*Parsons II*). Rather, in *Parsons II* we reiterated the requirement that the financial condition of the parties must be assessed as a whole. In that case we rejected a claim similar to Galen's that mere proof his expenses exceeded his income established an inability to pay alimony where he had been awarded substantial liquid assets. Regardless of what figure the trial court accepted as representative of his actual monthly income, it is plain from the record and our earlier analysis that Galen has personal income in the form of disability income of $932 and from milk check proceeds of $1,000 per month which is available to him. He has failed to establish that he has an inability to pay alimony based on his monthly income.

[¶ 16] The record demonstrates the trial court considered all of the relevant factors in awarding alimony. It found that after 26 years of marriage, the parties were each in their mid-forties, with some health problems, but none which interfered with the ability of either to earn a living. In particular, the court found that, although Galen suffers from osteoporosis and has had heart problems (in-

---

2. The factors to be considered in awarding alimony are: 1) the length of the marriage; 2) the respective earning capacity of the parties; 3) their respective financial condition after the property division; 4) their respective age, health and physical condition; 5) their station in life or social standing; and 6) the relative fault in the termination of the marriage. *Jones*, at ¶ 21, 542 N.W.2d 119.

cluding a heart attack in 1989), his health problems do not interfere with his ability to make a living as a dairy farmer. He has been in the milking business almost his entire life and, in 1993, bought out his father's interest in the dairy operation, and has been making his living as a dairy farmer ever since. His claims that he is so disabled he is barely able to support even himself were betrayed when he argued earlier that he operates the entire dairy farm without any help from Nancy to support his allegation that she did not contribute to the accumulation or increased value of the farming operation. Galen's disabilities have not prevented him from working or affected his financial ability to pay alimony. *See Schwab v. Schwab*, 505 N.W.2d 752, 754–55 (S.D.1993).

[¶ 17] The division of property made by the trial court placed the parties in almost equal financial condition.[3] The court found that the marriage and divorce had no bearing on the parties' social standing. Having assessed these considerations, the trial court also looked to the relative fault of the parties. It found substantial evidence of Galen's fault, particularly in light of the fact he openly called Nancy a "bitch" while she was testifying. The trial court adequately detailed the manner in which it evaluated the evidence in light of the appropriate factors to be considered in making an award of alimony, and Galen has not shown an abuse of discretion here.

[¶ 18] **III. Do the property division and award of alimony, when considered as a whole, demonstrate an abuse of discretion?**

■ [¶ 19] Next, Galen argues that, when considered together, the property division and award of alimony show an abuse of discretion. He contends that his income is insufficient to pay child support of $117 per

month, alimony of $350 per month, and make payments toward the lump sum property award to Nancy of $46,215 (which accrues interest at 12% annually). On this basis, he urges us to reverse the trial court's division of property and award of alimony so that he may have a second opportunity to litigate these issues.

■ [¶ 20] We have long adhered to the principle that we will review the property division and alimony together to determine if their combined effect demonstrates an abuse of discretion. *Kost v. Kost*, 515 N.W.2d 209, 214 (S.D.1994); *Strickland v. Strickland*, 470 N.W.2d 832 (S.D.1991). We do this because a significant change in the analysis of either the division of property or award of alimony will necessarily affect the evaluation of the relevant factors considered in reaching a decision on the remaining issue. That is not the case here. While an abuse of discretion has been demonstrated regarding the treatment of the proceeds of the milk checks as entirely property, our decision has only a minimal effect on this case. Whatever the manner in which the trial court adjusts the equities to account for this $5,000 decrease in the value of the marital estate, it will not alter the general analysis of the parties' financial circumstances regarding the award of alimony.

[¶ 21] According to Galen, after paying alimony and child support[4] he is left with "$194.79 on which to live each month." We have rejected his "interpretation" of his monthly income previously and concluded that he has income of approximately $2,000 per month. Although he claims he cannot pay the lump sum property award (which is a lien against his land), in reality he has sufficient assets to do so but is simply reluctant to liquidate any property. He summarizes his argument: "The farm is not an income-

---

3. This fact is true even given the modification we have noted in Issue I. Recall that our conclusion that the milk checks were part income and part property (rather than entirely property) has the effect of decreasing the value of the total marital estate by $5,000. The trial court found the gross value of the marital estate to be $176,652, and the net equity to be $126,663. It determined that each party was entitled to one half of the value of

the estate because they had contributed equally to the accumulation of assets.

4. Galen is paying child support for the benefit of the parties' youngest child, Amy. At the time of the trial in November, 1994, Amy was 17 years old. Her eighteenth birthday was November 20, 1995. Galen filed his reply brief in this matter on September 26, 1995.

producing asset, but rather it has been transformed into an alimony-producing asset."

[¶ 22] Galen claims that *O'Connell v. O'Connell*, 340 N.W.2d 700 (S.D.1983), mandates that he not be required to sell any of the dairy farm to satisfy the property division. His reliance is misplaced. In *O'Connell*, the husband claimed the family ranch should have been awarded to him and the wife should have been awarded payments for her share (which is precisely what happened here), rather than dividing the ranch between the parties. We affirmed the division of the ranch because the evidence established that it would be the only economically viable alternative and was an equitable division of the property, not because one party cannot be forced to liquidate assets to satisfy a property division.

[¶ 23] Galen's argument relies on an inaccurate assessment of the facts and law. As a whole, the property division and alimony award are both supported by the evidence. He has failed to demonstrate that the trial court's decision constitutes an abuse of discretion.

[¶ 24] **IV. Did the trial court abuse its discretion in awarding Nancy $2,500 in attorney fees?**

[¶ 25] Finally, Galen asserts the court abused its discretion in awarding Nancy attorney fees in the amount of $2,500. It is well-established that trial courts have the discretion to award attorney fees in divorce cases, and in deciding whether to do so may consider such facts as the parties' financial conditions, whether one party prolonged the litigation, and the complexity of the issues. *Grode*, 1996 SD 15, ¶ 38, 543 N.W.2d 795.

[¶ 26] A review of the trial court's memorandum decision reveals that it considered all of the appropriate factors when it ordered Galen to pay $2,500 of Nancy's attorney fees which totalled $4,634.18. Galen's conduct throughout the course of the divorce proceedings, combined with Nancy's limited financial means, warranted the award of attorney fees. No abuse of discretion has been established.

[¶ 27] Affirmed in part, reversed in part, and remanded.

[¶ 28] AMUNDSON, J., concurs.

[¶ 29] SABERS and KONENKAMP, JJ., concur in part and dissent in part as to the treatment of a portion of proceeds from the sale of milk as income rather than property in Issue I.

[¶ 30] GILBERTSON, J., concurs in part and dissents in part as to the division of the gifted farm land in Issue I.

KONENKAMP, Justice (concurring in part and dissenting in part).

[¶ 31] I concur with the majority, except on its decision to remand for redetermination on the milk checks. I am unaware of any authority for such a ruling and Galen has supplied us with none. To say that a portion of the milk checks constituted income and is thus not divisible contravenes established law. "South Dakota is an 'all property' state. Under SDCL 25–4–44, all property of either or both divorcing spouses is subject to equitable division by the court, regardless of title or origin." *Radigan v. Radigan*, 465 N.W.2d 483, 486 (S.D.1991). We should not attempt to fine tune a thorough and well-reasoned decision dividing marital assets. As the majority seems to acknowledge, in all other respects the court acted properly. To award Nancy a portion of the accumulated dairy operation income hardly seems an abuse of discretion, especially considering that Galen was awarded all the income producing property and almost two-thirds of all the marital property. Nancy only received 36% of the gross marital estate. I would affirm on all issues.

[¶ 32] SABERS, J., joins this special writing.

GILBERTSON, Justice (dissenting in part and concurring in part).

[¶ 33] **Issue 1: Inclusion of Gifted Property Into the Marital Assets.**

[¶ 34] I respectfully dissent to the inclusion into the marital assets of the eighty acres gifted to Galen and Nancy by Galen's parents. I find this to be a clear case of abuse

of discretion by the trial court. *Voelker v. Voelker*, 520 N.W.2d 903, 907 (S.D.1994).

[¶ 35] This eighty acres of farmland had been held by Galen's parents as part of their family farm. The land was conveyed to Galen and Nancy by filing of a warranty deed on January 10, 1994. Only six months later Nancy, not Galen, filed for divorce. Of the approximately 10,000 days the couple were married, they held joint title to the land for a minuscule 180 days or only two per cent of the time they were together.

[¶ 36] The fact that Galen's parents were optimistic enough, or naive enough, to assume their son's marriage of 26 years would continue on and therefore conveyed the realty in joint tenancy to Galen and Nancy, is hardly as determinative as the trial court and the majority contend. It exalts form to the exclusion of the substantive criteria as set forth in *Voelker*.[1] Those factors to be used for determining property division are: (1) duration of the marriage; (2) value of the property owned by the parties; (3) age of the parties; (4) health of the parties; (5) competency of the parties to earn a living; (6) contribution of each party to the accumulation of property; and (7) the income-producing capacity of the property owned by the parties. The rationale of the trial court is also inconsistent with the dictates of SDCL 25–4–44 which authorizes division of marital assets upon a divorce "whether the title to such property is in the name of the husband or the wife." In *Clement v. Clement*, 292 N.W.2d 799, 801 (S.D.1980) we held that "the statute [SDCL 25–4–44] is specific that title does not control the distribution of the property in a divorce action." *See also Prentice v. Prentice*, 322 N.W.2d 880, 882 (S.D.1982).

[¶ 37] The purpose of the conveyance is uncontested. Galen testified that it was an advance on his inheritance from his parents. Nancy testified she recognized the transfer was a gift as an advance on Galen's inheritance but nevertheless demanded a share.[2] This admission of Nancy's by itself should be enough to overcome the assumption that the conveyance was meant to be a gift jointly to Galen and Nancy. Yet despite Nancy's candid admission, the trial court found as fact that this land was marital property based solely on the face of the deed.

[¶ 38] A detailed comparison of the factors addressed in *Voelker* which are noticeably absent from the trial court's findings and the majority opinion, show the lack of justification in treating this land as a martial asset. Both in *Voelker* and in this case the parties all worked, were in generally good health, were capable of supporting themselves and were possessed of less than substantial assets. When we get to the specifics of the parties' direct relationship to the land, the comparison between the two cases comes into even sharper focus.

[¶ 39] In *Voelker*, the "[h]usband helped his father farm the property. Wife had no involvement with the land. She did nothing to contribute to the accumulation of the property." *Voelker*, 520 N.W.2d at 908. The same applies here during the time between the conveyance and separation. In *Voelker*, the husband acquired the property through probate six months before separation. Here it was also six months. In *Voelker*, "[n]one of the income from the land was ever commingled with marital monies. None of the income was used to purchase marital property. None of the income from the inherited property was used to pay marital debts. Wife had no involvement with the property and made no contribution in acquiring the

---

1. Curiously, the trial court had no difficulty in going behind the four corners of the milk checks that were made payable to Galen's mother to find that the proceeds were marital assets. Yet when it came to the four corners of a deed to the realty signed by Galen's parents, the court went no further in its findings, contrary to *Voelker*.

2. Nancy testified to the following on this issue:
   Q: Would you agree with me that this gifted 80 acres would not have been made to you if in fact you were not the spouse of Galen?
   . . .
   A: Yes
   . . .
   Q: How do you inherit from his parents?
   A: I figure I'm flesh and blood now. You consider when I'm married that I'm not, that I'm just an idiot like he has treated me.
   Q: So in essence you're saying you're entitled to inheritance from Galen's parents?
   A: Yes.

land." *Id.* Again, it is the same in the case now before us.

[¶ 40] There is one major difference with *Voelker.* Therein we held the trial court's award of thirty-five per cent of the inherited realty to the non-relative spouse to be an abuse of discretion. Here the majority affirms an even greater award, that of fifty per cent, to a non-relative of the grantors.

[¶ 41] In *Andera v. Andera,* 277 N.W.2d 725 (S.D.1979), the family farm was purchased at an artificially low price by the husband from his mother *six months* prior to the commencement of the divorce. Like the case now before us, the transfer document (a contract for deed) showed both the husband and wife as purchasers from the husband's mother. In affirming the trial court's refusal to treat the land as a marital asset we noted in *Andera,* "[t]he land was in the nature of a gift from the mother to the son, and there was no contribution of any significance by appellant [the wife] in acquiring the land." *Andera,* 277 N.W.2d at 728.[3]

[¶ 42] In *Bennett v. Bennett,* 516 N.W.2d 672 (S.D.1994) the wife inherited assets from her father who died during the course of the marriage but the estate had not been closed at the time of the divorce. We held that "[i]n this situation (and noting the factors to be considered in property divisions) Robert had little if any involvement with the property Bonnie inherited from her father and did nothing to contribute to the accumulation of the property." *Id.* at 677. We upheld the exclusion of the inherited property from the marital assets to be divided by the divorce decree.

[¶ 43] The intent of Galen's parents was clear. It was to keep the farm in the family

and see their life's work continue on through the efforts of their son. It clearly was not to see a portion of their homestead in the hands of a hostile ex-spouse.

[¶ 44] This case should stand as a stark warning to farmers with children and their estate planners or for that matter, any parent desirous of passing on the family business and keeping it in the family. It is also without any support when examined in comparison to our substantial prior case law.

[¶ 45] I concur with the treatment of the milk checks. It appears the trial court considered farm debt incurred prior to the divorce so it properly considered the milk payments not applied to personal use.

[¶ 46] **Issues 2, 3 and 4:** I concur. However in consideration of alimony as affected by property division, the 80 acres discussed in Issue One should be excluded.

---

3. In *Clement,* 292 N.W.2d 799, we affirmed the trial court for including inherited land which had been in the name of the husband for nine years prior to the divorce. In *Prentice,* 322 N.W.2d 880, we reversed the trial court's refusal to include gifted land into the marital assets although the husband had received the gift prior to the marriage. This was as a result of the wife contributing her earnings to the family's ability to improve the land during the eight years of the marriage. In *Balvin v. Balvin,* 301 N.W.2d 678 (S.D.1981), we affirmed the trial court's determination that the family farm was gifted to the husband by his parents and, despite the fact the

family had lived on it for nine years prior to the divorce, it was not to be considered a marital asset. We did reverse the trial court for failure to include subsequent improvements to the farm in the marital assets. In *Buseman v. Buseman,* 299 N.W.2d 807 (S.D.1980), we affirmed the award of $21,200 to the wife despite the husband's protests that he had inherited $60,000 to purchase the family farm. The majority noted the marriage lasted six years and the wife worked long and hard on this farm (including calving) and invested $20,000 of her own earnings for the maintenance of the farm and family.