1998 SD 19

**Warren K. PELLEGRIN, Plaintiff and Appellee,**

v.

**Norma L. PELLEGRIN, Defendant and Appellant.**

No. 20007.

Supreme Court of South Dakota.

Considered on Briefs Dec. 2, 1997.

Decided Feb. 25, 1998.

Thomas E. Brady, Spearfish, for plaintiff and appellee.

Bryce A. Flint of Jackley & Flint, Sturgis, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Warren K. Pellegrin (Warren) filed for divorce against Norma L. Pellegrin (Norma) on the grounds of irreconcilable differences and requested an equitable division of the parties' property and debts. Norma filed a counterclaim seeking a divorce on alternative grounds of irreconcilable differences and extreme mental cruelty. The trial court granted Warren a divorce on the grounds of extreme cruelty, denied Norma's request for a divorce on the grounds of extreme cruelty, and made an equitable division of the property and debts. Norma appeals. We affirm.

## FACTS

[¶ 2.] Warren and Norma Pellegrin were married in 1975. Warren was seventy and Norma was sixty-three years old at the time of trial. Warren and Norma both had been previously married and have five and six adult children, respectively. They have no children by this marriage.

[¶ 3.] At the time of their marriage, Warren was a graduate of SDSU and a school teacher, earning approximately $7,000 per year. Warren retired from teaching in 1991. In addition to teaching full time, he worked on the ranch at Enning, South Dakota, where the couple came to live within the first years of their marriage. Norma had a high school degree and worked two jobs—as a cook at

the school and nights as a waitress. Norma also helped out on the ranch, including mowing and raking hay during the summer. Norma eventually acquired a college degree during the marriage and has been employed continuously as a school teacher since 1991.

[¶ 4.] Warren and Norma have contrasting states of health. On the one hand, Warren has suffered from poor health. During the past six months, he has suffered from congestive heart failure and also a slight stroke. His poor health condition has caused him to retire from active ranching. On the other hand, Norma enjoys good health.

[¶ 5.] The parties each brought assets into the marriage. Warren's notable assets at that time included 560 acres of pasture and cropland, eighteen cows and a pickup. Warren's net worth was reduced by debts of approximately $17,000. Norma owned a trailer home in Wall with an addition added to it, a 1975 Pontiac, and substantial amounts in CD's, savings and checking accounts.

[¶ 6.] The ranch operation grew during the marriage. The parties purchased 80 acres of land from Warren's brother and 320 acres of pasture at Marcus (Marcus land), tripled their cattle herd, built buildings and improvements, and planted trees.

[¶ 7.] Eventually, the marriage became strained and Warren filed for divorce on grounds of irreconcilable differences along with a request for a division of the parties' property. Norma counterclaimed, seeking divorce on alternative grounds of irreconcilable differences and extreme mental cruelty, and requested a property division as well. Warren stipulated that the decree of divorce could be entered in favor of both parties on the grounds of irreconcilable differences. However, Norma would not give her consent to a divorce on those grounds at the trial before the court on September 26 and 27, 1996. She stated she did not want a divorce, that she was too old to go through one, and that she filed for divorce just to protect herself. After refusing to stipulate to the divorce on grounds of irreconcilable differences at trial, counsel for Norma allowed Warren to lay grounds for an alternative theory for the divorce. Warren then proceeded with evidence in support of a divorce based on extreme cruelty.

[¶ 8.] The trial court granted Warren a divorce on grounds of extreme cruelty and denied Norma's counterclaim on the same grounds. The court also found the value of the marital estate to be $222,355, after excluding a premarital allowance of $28,000 for Warren's family ranch[1] and a premarital allowance for the value of a trust of which Norma was a beneficiary.[2] The assets representing the $222,355 were divided by the court into substantially equal shares for each party. Norma brought this appeal raising the following issues:

I. Whether Norma established grounds for a divorce on the basis of extreme mental cruelty.

II. Whether the trial court's division of property and debts of the marriage was an abuse of discretion.

## STANDARD OF REVIEW

[¶ 9.] "Findings of fact are not set aside unless this court finds them to be clearly erroneous; and we must give 'due regard' to the opportunity of the trial court 'to judge the credibility of the witnesses.'" *Osman v. Keating-Osman,* 521 N.W.2d 655, 657 (S.D. 1994) (citation omitted).

[¶ 10.] A trial court's division of property will not be overturned by this court unless it appears the trial court abused its discretion. *Billion v. Billion,* 1996 SD 101, ¶ 14, 553 N.W.2d 226, 230; *DeVRIES v. DeVRIES,* 519 N.W.2d 73, 75 (S.D.1994). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evi-

---

1. This $28,000 premarital set-aside was computed by multiplying $50 an acre by Warren's 560 acres of premarital property. The trial court only allowed $50 an acre even though the evidence was undisputed that the land was worth at least $60 an acre at the time of the marriage between Warren and Norma. The value of these 560 acres of Warren's ancestral land was the only premarital set-aside allowed to Warren.

2. Norma has a one-twelfth interest in a trust containing 2,400 acres of ranch land in Meade County.

dence." *DeVRIES,* 519 N.W.2d at 75 (citing *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984)). The determination is not "whether we would have made the same ruling, but whether 'a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.'" *Id.* (citing *Steffens v. Peterson,* 503 N.W.2d 254, 257 (S.D.1993)).

## DECISION

### [¶ 11.] I. Norma's Claim of Extreme Mental Cruelty

[¶ 12.] As a preliminary matter, we note that Norma's brief on this issue strays from the discussion of Norma's claim for divorce to the propriety of the court granting Warren a divorce. Shortly thereafter, however, she admits that she "does not argue the issue of whether Warren should have been granted a divorce. She requested the divorce be granted to both parties on the grounds of extreme mental cruelty. The issue is the trial court's denial of a divorce to her on grounds of extreme mental cruelty." Moreover, her own proposed findings of fact did not contest the fact that Warren is entitled to a divorce on the basis of extreme mental cruelty. Even were we to ignore her stated waiver of the issue of Warren's grant of divorce, Norma's failure to cite any authority on this issue effectively waives it. *Zens v. Chicago, Milwaukee, St. Paul & Pac.,* 479 N.W.2d 155, 159 (S.D.1991) (citation omitted). Therefore, we proceed to the issue of Norma's claim for divorce on the basis of extreme mental cruelty.

[¶ 13.] "Extreme cruelty is the infliction of ... grievous mental suffering upon the other, by one party to the marriage." SDCL 25–4–4. "In a marital setting, the definition of extreme cruelty differs according to the personalities of the parties involved." *Schaack v. Schaack,* 414 N.W.2d 818, 820 (S.D.1987) (citing *Brandsma v. Brandsma,* 318 N.W.2d 318, 318 (S.D.1982)). The trial court found that Norma failed to meet her burden of proof to show extreme mental cruelty. Norma's testimony before the trial court was marked by her repeated statements that she did not want a divorce, but the record reflects very little evidence that could support a finding that Warren had engaged in extreme mental cruelty. The substantive allegations made by Norma that would reflect on this issue, such as an extramarital affair, were all contested by Warren. "Where findings of the trial court are based on conflicting testimony, as they are in this case, we will not disturb them on appeal." *Schaack,* 414 N.W.2d at 820 (citation omitted). "Therefore, having thoroughly reviewed the record in light of our prior holdings on the topic, we cannot say that the trial court was clearly erroneous in finding that [Warren's] actions did not constitute extreme cruelty." *Id.* at 820–21.

[¶ 14.] Even had the trial court awarded a divorce to Norma on the basis of extreme mental cruelty, the outcome of the property settlement would not have been affected. *See Cole v. Cole,* 384 N.W.2d 312, 314 (S.D. 1986) (noting that "[g]enerally, fault will not be taken into account with regard to an award of property"); SDCL 25–4–45.1. Although fault is a factor in making alimony awards, neither party sought an award of alimony in this case. *Dussart v. Dussart,* 1996 SD 41, ¶ 9, 546 N.W.2d 109, 111. Thus, we find no reversible error as to this issue.

### [¶ 15.] II. Division of Property

[¶ 16.] SDCL 25–4–44 empowers a trial court to make a division of property at the time of a divorce as follows:

> When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties.

"While this discretion is broad, it is not uncontrolled and must be soundly and substantially based on the evidence." *Endres v. Endres,* 532 N.W.2d 65, 67 (S.D.1995) (citing *Gibson v. Gibson,* 437 N.W.2d 170, 171 (S.D. 1989)) (other citations omitted).

[¶ 17.] The trial court allowed Warren to set aside a premarital contribution for the value of the 560 acres of land which had been in Warren's family and was passed down to

him before he married Norma. However, the trial court also determined the increase in value of this land from the time of Warren's marriage to Norma was a marital asset. Norma contests the trial court decision to give Warren a set-aside for the value of his family land as a premarital contribution, while Norma was not given "credit" for all the assets she held before they got married.

[¶ 18.] In this case, the trial court allowed premarital exclusions for both parties to this marriage. Warren received part of the value of his family ranch. Norma received her one-twelfth interest in the Schell Trust, which held 2,400 acres of Meade County ranch land. The exclusion of the value of Warren's family land at the time of the marriage was justified by the trial court on the basis that it had been part of Warren's family ranch. The court did take into account in its findings of fact that Norma also brought premarital assets to the marriage, but the court chose to include those assets as part of the equitable division of marital property with the exception of the Schell Trust.

[¶ 19.] Norma does not point to any authority which stands for the proposition that a court must give both divorcing parties credit for all their premarital assets in order to make an equitable division of property. Thus, Norma violates SDCL 15–26A–60(6) and a long line of decisions of this Court that require a party to cite authority for positions argued on appeal. *See, e.g., Fox v. Fox,* 467 N.W.2d 762, 768 (S.D.1991); *Nielsen v. McCabe,* 442 N.W.2d 477, 480 (S.D.1989); *Kanaly v. State ex rel. Janklow,* 403 N.W.2d 33, 34 (S.D.1987); *Kostel Funeral Home, Inc. v. Duke Tufty Co.,* 393 N.W.2d 449, 452 (S.D.1986). While Norma lacks authority for her position, she seems to overlook the fact that "[t]his Court has consistently held that the trial court has discretion in determining how to consider premarital assets and gifts during a marriage." *Strickland v. Strickland,* 470 N.W.2d 832, 836 (S.D.1991) (citing *Lien v. Lien,* 278 N.W.2d 436, 442 (S.D. 1979)); *see also Balvin v. Balvin,* 301 N.W.2d 678, 680 (S.D.1981) (finding decision to exclude farm given to husband from marital estate was within trial court's discretion); *Andera v. Andera,* 277 N.W.2d 725, 728 (S.D. 1979) (approving trial court's exclusion from marital estate of a 640–acre farm sold by mother of husband to husband at below market value).

[¶ 20.] In *Strickland,* the trial court had recognized various premarital assets that one party brought to the marriage, but the court refused to exclude them from the property division. 470 N.W.2d at 836. We recognized on appeal that "in its discretion, the trial court determined that these items must be part of the marital estate to make the division equitable." *Id.* Therefore, we found no abuse of discretion. *Id.* In similar fashion, we conclude in this case that the inclusion of Norma's premarital assets in the property division was not an abuse of discretion, but was necessary for an equitable division of property under the circumstances.

[¶ 21.] We have previously dealt with the question of how to handle property divisions involving claims to "non-marital" property as follows:

> What is important is that the court, before it sets aside certain properties as "non-marital," consider the seven principal factors we have repeatedly held must be considered in making an equitable property division. The factors are: (1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets. Only in the case where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support, should a court set it aside as "non-marital" property.

*Billion,* 1996 SD 101, ¶ 21, 553 N.W.2d at 226 (citations omitted).

[¶ 22.] Using the appropriate factors, the trial court set forth its findings of fact. This was a second marriage that had lasted for more than twenty years. Warren was seventy years old and Norma was sixty-three at the time of trial. Warren suffered from poor health which limited his activities. Norma was in good health. Warren was retired

from teaching and his health condition required that he retire from active ranching. Norma was able to continue her career as a teacher. Warren had acquired his college education before their marriage. Norma earned her college education during the marriage. Moreover, there is no evidence that Norma either made any contribution to the acquisition of the 560 acres that Warren already owned before the marriage or that Norma is in need of support. *See id.* (explaining contribution toward acquisition of the asset or need for support would prohibit trial court from setting aside "nonmarital" property). In fact, judging by the parties' current earning capacity, Warren would be the one in greater need of support.

[¶ 23.] Norma also seems to attempt to support her allegations of error by implying that she was entitled to at least an equal portion of the parties' assets. However, as we have noted before, "[w]e will not bind a trial court to a strict mathematical formula when reviewing marital property divisions." *Bennett v. Bennett,* 516 N.W.2d 672, 675 (S.D.1994) (citation omitted). The differences in the relative positions of Warren and Norma were significant in this case. The trial court considered all the relevant facts and exercised its discretion to set aside part of the premarital contributions of Warren. Comparing Warren's and Norma's respective age, health, earning capacity, and other factors, it was not unfair for Warren to receive more in the way of total assets than Norma.

[¶ 24.] Trial courts bear an onerous burden in deciding what constitutes an equitable division of property. Because of this, we recognize that the law does not require perfection that would approach a mathematical certainty. In this case, both parties leave the relationship with assets of greater value than those with which they began the relationship. While the record certainly shows that Warren and Norma are both less than enthusiastic with the trial court's division, we are unable to say that the court's decision was an abuse of discretion under all the circumstances of the case.

[¶ 25.] Norma also challenges the trial court's determination of the amounts in savings and checking for the respective parties, in addition to questioning the sale of two bulls. However, the evidence to which she points to on appeal makes for a less than compelling argument that error was committed. The dispute about the valuation of the parties' bank accounts apparently stems from differences in reference dates for valuation purposes, but no explanation is given why the dates the court used were in error. The sale of the bulls appears to be allowed under the property settlement and any misappropriation of the funds from this sale can be disputed by Norma in a contempt proceeding against Warren, if she so chooses. Additionally, we have examined Norma's arguments as to the valuation of certain other assets and find them to be without merit.

[¶ 26.] The judgment of the trial court is affirmed.

[¶ 27.] MILLER, C.J., and GILBERTSON, J., concur.

[¶ 28.] SABERS and KONENKAMP, JJ., concur in part and dissent in part.

KONENKAMP, Justice (concurring in part and dissenting in part).

[¶ 29.] I agree with the majority's analysis in Issue 1, but I believe the trial court abused its discretion in failing to explain why it sheltered some of Warren's premarital assets, while it allowed Norma absolutely no deduction for her premarital contributions. The trial court excluded from its property division approximately $28,000 of premarital holdings for Warren. Yet, while acknowledging in its findings that Norma brought $50,000 in premarital assets to the marriage, the court failed to discuss why she should not receive any credit for such contributions. In total, Warren received property worth $138,685, which included the $28,000 set aside by the trial court, and Norma received $110,010. Admittedly, a trial court is not required to give both divorcing parties credit for their premarital assets, but if one is given such credit, while the other is not, it is incumbent upon the court to at least state a rationale for its decision. *See generally Laird v. Laird,* 322 N.W.2d 254, 256 (S.D.1982).

[¶ 30.] Trial courts have "broad discretion in determining whether property is marital in nature and subject to division." *Heckenlaible v. Heckenlaible,* 1996 SD 32, ¶ 8, 545 N.W.2d 481, 483. "This Court has consistently held that the trial court has discretion in determining how to consider premarital assets ...; [whether to include or exclude them from the marital estate]." *Strickland v. Strickland,* 470 N.W.2d 832, 836 (S.D. 1991). Before setting aside certain property as premarital, the trial court must weigh the seven principal factors considered in making an equitable property division. *Voelker v. Voelker,* 520 N.W.2d 903, 907 (S.D.1994). This Court will not disturb a trial court's division of property unless it clearly appears from the record that it abused its discretion. *Vander Pol v. Vander Pol,* 484 N.W.2d 522, 523 (S.D.1992); *Kanta v. Kanta,* 479 N.W.2d 505, 507 (S.D.1991); *Johnson v. Johnson,* 471 N.W.2d 156, 159 (S.D.1991); *Fox v. Fox,* 467 N.W.2d 762, 766 (S.D.1991); *Nelson v. Nelson,* 454 N.W.2d 533, 537 (S.D.1990). While this discretion is broad, it is not uncontrolled and must be soundly and substantially based on the evidence. *Gibson v. Gibson,* 437 N.W.2d 170, 171 (S.D.1989); *Goehry v. Goehry,* 354 N.W.2d 192, 194 (S.D.1984); *Owen v. Owen,* 351 N.W.2d 139, 141 (S.D.1984).

[¶ 31.] What is an abuse of discretion? The definition will always depend upon the context in which discretion is used. Sometimes it will be defined broadly, other times, narrowly. 1 S. Childress & M. Davis, *Federal Standards of Review* § 4.21, at 4–155 (2d ed 1992). Generally, discretion means "no decision either way is dictated by the law." H.L.A. Hart, *The Concept of Law* 272 (2d ed 1994). "Abuse of discretion is a phrase which sounds worse than it really is." *In re Josephson,* 218 F.2d 174, 182 (1st Cir.1954). Implicit, however, within the exercise of discretion is the requirement that the decision not be arbitrary, meaning it must be within a range of permissible choices and have a ra-

tionale based in evidence. "Wide discretion is accompanied by heavy responsibility...." *Michelson v. United States,* 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948). A court's failure to explain its reasoning leaves an unnecessary void in the process, which may, in certain circumstances, obscure an arbitrary decision. *See Braaten v. Deere & Co., Inc.,* 569 N.W.2d 563, 565 (N.D.1997)(stating that an "[a]buse of discretion occurs when a court acts in an arbitrary manner."). *See also Lovcik v. Ellingson,* 569 N.W.2d 697, 700 (N.D.1997); *Tyler v. Tyler,* 253 Neb. 209, 570 N.W.2d 317, 319 (1997)("A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system."); *Huener v. Huener,* 110 Ohio App.3d 322, 674 N.E.2d 389, 391 (1996).

[¶ 32.] The court's findings of fact and conclusions of law give no hint why what appears to be equal was treated unequally. It is not for us to supply an explanation when the trial court gave none. Therefore, I would reverse and remand with instructions to the court to reconsider the factors used in effecting an equitable property distribution, and provide a rationale for its distribution scheme. Lastly, I would grant Norma $1,000 for appellate attorney fees.

[¶ 33.] SABERS, J., joins this special writing.