2005 SD 101

**Daniel C. GODFREY, Plaintiff and Appellee,**

v.

**Pamila K. GODFREY, Defendant and Appellant.**

No. 23312.

Supreme Court of South Dakota.

Considered on Briefs May 23, 2005.

Decided Sept. 28, 2005.

Barton R. Banks of Banks, Johnson, Colbath, Sumner & Kappelman, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Linda Lea M. Viken of Viken Law Firm, Rapid City, South Dakota, Attorneys for defendant and appellant.

GIENAPP, Circuit Judge.

[¶ 1.] Pamila K. Godfrey appeals from a judgment and decree of divorce. This appeal challenges the division of property and, specifically, the determination by the trial court that certain property was non-marital property.

[¶ 2.] The trial of this matter was held on January 28 and 29, 2003. Additional hearings were held on May 19, 2003, September 30, 2003, December 31, 2003, and April 6, 2004. The judgment and decree of divorce was signed and filed on April 26, 2004. We reverse and remand.

### FACTS

[¶ 3.] Pamila and Daniel Godfrey were married in Florida in 1977. At the time of the marriage Pamila was eighteen years old and Daniel was twenty-four. That same year the couple moved to South Dakota and Daniel began his employment with a family owned business. The couple had three children, all of whom were adults at the time of the divorce. Both parties resided in South Dakota.

[¶ 4.] Daniel was employed and was a minority stockholder in the family owned business known as Godfrey Brake Service, Inc. The business was located in Rapid City, South Dakota. Daniel was earning a base salary of $50,000 per year plus dividends ranging from $20,000 to $48,000 per year.

[¶ 5.] Pamila was a stay-at-home mother for approximately ten years while the children were at a young age. She held a volunteer position at the YMCA during portions of that ten year time period. The volunteer position evolved into a paid position with the gymnastics program. Pamila ultimately rose to the position of gymnastics director at the YMCA. She was injured in a work related accident in 1989 that resulted in nine surgeries over a seven year period. She resigned her position in 1995.[1] The accident caused injuries to Pamila's femur, ribs, back and pelvis. Pamila received a worker's compensation settlement of $387,485.43. Approximately $70,000 of the settlement was used to pay off a mortgage on the parties' homestead.

[¶ 6.] After leaving her employment with the YMCA in 1995, Pamila started a private business called Rising Star Gymnastics. The profitability of the business was minimal.[2]

[¶ 7.] Daniel's parents owned real estate on Highway 16 near Rapid City. His parents had three children and in 1992 they made lifetime distributions of some of their estate. One of the three children did not want real estate and was given a cash distribution. Daniel and Pamila and Daniel's brother and his spouse were deeded portions of the Highway 16 real estate. Daniel and Pamila received 66.410 acres of land platted as Lot 2 of the Godfrey Addition. On July 31, 1992, Daniel's parents executed a warranty deed conveying Lot 2 to Daniel and Pamila as joint tenants with rights of survivorship. A corrective deed

was filed in 1994 which also listed Daniel and Pamila as joint tenants. In addition, Daniel's father and mother filed separate gift tax returns. Each return specified that an undivided one-fourth interest in the property was gifted to Pamila and an undivided one-fourth interest was gifted to Daniel.

[¶ 8.] Subsequent to their receipt of the gifted property, Daniel and Pamila sold their previous residence and built a home on the 66.410 acre tract. They were still residing in that home at the time of the commencement of this action.

[¶ 9.] During pretrial negotiations Daniel and Pamila agreed that the home and approximately 10 acres out of the 66.410 acre tract were marital property. They did not agree that the remaining 56 acres[3] of gifted property was marital property subject to distribution. Resolution of that dispute was left to the trial court. The trial court found that the remaining 56 acres of gifted property was non-marital property and awarded it to Daniel.

## ISSUES

[¶ 10.] The following issues are presented in this appeal:

Whether the trial court erred in excluding the 56 acres of gifted property from marital property and in failing to consider the value of the 56 acres in making the appropriate distribution of property.

If the trial court was correct in excluding the 56 acres of gifted property from marital property, whether the apprecia-

---

1. There was a factual dispute as to whether Pamila quit her position with the YMCA because of the work related injuries or just quit. The trial court found that she voluntarily quit her YMCA position.

2. The trial court found that Pamila was earning approximately $25,000 per year from the business at the time of trial.

3. Given that the acreage in the gifted property was not measured in whole numbers, the figure "56 acres" in this decision is used as an approximation of the amount of property actually in dispute, i.e. the original 66.410 acre tract less the agreed upon 10 acres.

tion in value of the gifted property should have been included as a marital asset.

Whether Pamila is entitled to attorney fees on appeal.

## STANDARD OF REVIEW

[¶ 11.] The standard of review is the abuse of discretion standard. *Pellegrin v. Pellegrin*, 1998 SD 19, ¶ 10, 574 N.W.2d 644, 646. Abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *Id.* The determination is not " 'whether we would have made the same ruling, but whether "a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." ' " (quoting *DeVries v. DeVries*, 519 N.W.2d 73, 75 (S.D.1994)). Findings of fact, reviewed under the clearly erroneous standard, will not be overturned unless the reviewing court is left with a firm conviction that a mistake has been made. *Hilbrands v. Hilbrands*, 429 N.W.2d 750, 751 (S.D.1988).

## ANALYSIS

### ISSUE ONE

[¶ 12.] **Whether the trial court erred in excluding the 56 acres of gifted property from marital property and in failing to consider the value of the 56 acres in making the appropriate distribution of property.**

[¶ 13.] The evidence in this case established certain specific and unique facts that require reversal and the inclusion of the disputed 56 acres as marital property subject to distribution by the trial court.

[¶ 14.] SDCL 25–4–44 provides:

When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties.

[¶ 15.] In *Billion v. Billion*, 1996 SD 101, 553 N.W.2d 226, this Court stressed the fact that a court must consider both equity and the circumstances of the parties when a property division is made.

[¶ 16.] Before a court sets aside properties as non-marital there are seven principal factors that this Court has repeatedly held should be considered. These seven factors are:

(1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

*Pellegrin*, 1998 SD 19 at ¶ 21, 574 N.W.2d at 648 (quoting *Billion, supra.*) The *Pellegrin* court went on to state: "Only in the case where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support, should a court set it aside as 'non-marital' property." *Id.*

[¶ 17.] In this case the trial court made the following finding of fact relating to the real estate at issue:

Despite the form of this transaction, the Court finds that this land was intended to be Plaintiff's inheritance and is not marital property. No marital monies were spent in the acquisition of this property and the monies used to pay the real estate taxes were largely, if not entirely, obtained from dividends issued

by Godfrey Brake Service. Further, this property borders other land gifted to Plaintiff's brother as well as land retained by Raymon and Gladys Godfrey. Accordingly, based upon the intent of the donor and the treatment of the property by the parties after the gift, the Court finds that this property is not marital property except as to the 10 acres that the parties have stipulated is appurtenant to the marital residence.

[¶ 18.] The trial court made the following conclusion of law:

> The real property gifted by Raymon and Gladys Godfrey along Highway 16, other than the ten acres associated with the marital residence as stipulated between the parties, is not marital property and shall be retained by the Plaintiff as his sole and separate property free of any claim by the Defendant. In making this conclusion, the Court is considering the intention of the donor who made the gift, the date of the gift, the nature of the property gifted, the treatment of the gifted property by the parties during their marriage, the assets and debt being distributed to each party, and is placing substance over form.

[¶ 19.] The trial court did not address in either its findings of fact or its conclusions of law the seven principal factors to be considered. Rather, the trial court relied primarily on the intention of the donor. The intention of the donor may be considered by the trial court, but it is not the deciding factor. With respect to inherited property, it is not ipso facto excluded from consideration in the overall division of property. *Garnos v. Garnos,* 376 N.W.2d 571, 573 (S.D.1985).

[¶ 20.] An examination of the seven principal factors, combined with other evidence unique to this case, establishes that the disputed property should have been included as marital property. The duration of this marriage was approximately twenty-six years and brought into this world three children who are now adults. Pamila had significant health problems as a result of the 1989 accident that led to nine surgeries over a seven year period. This resulted in a significant worker's compensation settlement.[4] Daniel has a significantly greater competency to earn a living than Pamila. Daniel retained the stock in the family corporation, an asset with significant income producing capacity. Pamila had no training or education other than her experience in gymnastics.

[¶ 21.] Under the facts it is also clear that Pamila made more than de minimis contributions to the acquisition or maintenance of the property. The real estate taxes were paid out of marital assets. Pamila was involved in entering into a contract for the construction of a road across the property. She was a participant in an agreement with Daniel's parents and brother and sister-in-law concerning a well. She was also a participant in developing other easements related to the property. Daniel and Pamila entered into a contract with a construction company to build a road across the property. They constructed a fence around the land, landscaped it and planted trees. All of those improvements were paid for with marital funds. Proceeds from the sale of hay harvested from the property were deposited

4. This settlement, in the amount of $387,485.43, was a settlement under the worker's compensation laws of the State of South Dakota. In addition to the use of settlement proceeds to pay off the mortgage on the homestead, portions of the settlement were utilized to pay off marital debt and also to fund Rising Star Gymnastics. The settlement amount was merged into the parties' finances and was not set aside as non-marital property. The trial court did find that Pamila was not disabled at the time of trial.

in marital accounts. The parties built a home on the parcel which was divided into separate parcels for the purpose of this litigation. The fact that real estate taxes may have been paid out of dividends received by Daniel does not mean that Pamila did not contribute as the dividends were a marital asset.

[¶ 22.] In *Billion* this Court discussed the fact that it always reviews property divisions and post-divorce alimony awards in conjunction with each other. In this case Pamila was awarded alimony of $800 per month. Daniel was awarded a judgment of $181,655.50 against Pamila payable in fifteen years with interest at the rate of six percent per annum. This judgment was granted primarily to equalize assets as a result of Pamila receiving the marital home built on the gifted property. The alimony award did not obviate the error in the non-marital property designation in light of the sizeable judgment against the home.

[¶ 23.] Other unique facts involved in this case supported the inclusion of the gifted property as marital property such as the form of the deeds involved and the filing of the federal gift tax returns. Although the trial court was not bound by the form of the deed, this Court has held that a deed conveying real estate to a husband and wife as joint tenants is convincing evidence of the realty's status as marital property. *See Heckenlaible v. Heckenlaible*, 1996 SD 32, ¶ 8, 545 N.W.2d 481, 483. In *Billion* one of the decisive factors was that there was no question that the assets at issue in that case were not given jointly to the parties.

[¶ 24.] In addition to the foregoing, Daniel's mother and father filed separate federal gift tax returns designating on each return that each of the parties to this action received an undivided one-fourth interest.

[¶ 25.] In deciding the nature of these transactions was form over substance, the trial court relied on the following deposition testimony from Daniel's father:

> Initially, we gave them—we split, between him and Bob, the land, equally and it was given to the two boys, and they were married and so their wives names was on there, too.

[¶ 26.] When asked about the fact that both names were on the warranty deed Daniel's father responded: "Well, that's what it said on the sheet, but that isn't the way we worded it when we gave it to them." Further testimony was as follows:

Q: Was it given to them, jointly, on the deed?

A: It was given to them.

Q: Well you put his wife's name on the deed?

A: We didn't make up the deed. It was done by an attorney and they put his wife's name on there.

Q: But you and your wife both signed the deed?

A: Yes.

[¶ 27.] Such testimony, ten years after a transaction, was insufficient to overcome the evidence consisting of the deeds establishing joint tenancy and the representation to the federal government that the property was a gift to *both* Daniel and Pamila.[5] This testimony was from Daniel's father. No testimony was received from Daniel's mother who also signed both the deeds and filed a separate gift tax return.

[¶ 28.] Under the foregoing facts unique to this case, this Court finds that

---

5. 26 USC § 7206 makes it a federal felony to willfully make and subscribe any return which the subscriber does not believe to be true and correct as to every material matter.

the trial court abused its discretion and that the decision of the trial court was not justified by, and was clearly against reason and evidence. The trial court's decision is reversed and the case is remanded with instructions to consider the 56 acres of gifted property as marital property.

## ISSUE TWO

[¶ 29.] **If the trial court was correct in excluding the 56 acres of gifted property from marital property, whether the appreciation in value of the gifted property should have been included as a marital asset.**

[¶ 30.] As an alternate issue, Pamila argues that, at a minimum, the trial court should have considered the appreciation in the value of the gifted property that occurred after its receipt and during the marriage of the parties. Under our ruling on Issue One, *all* of the gifted property should have been considered as marital property and it is not necessary to address this issue.

## ISSUE THREE

[¶ 31.] **Whether Pamila is entitled to attorney fees on appeal.**

[¶ 32.] Pamila moved this Court for an order granting attorney's fees and costs in connection with this appeal. SDCL 15–17–38 provides for the allowance of attorney's fees in divorce actions. The factors to be considered in awarding appellate attorney's fees are: " 'The property owned by each party; their relative incomes; whether the requesting party's property is

in fixed or liquid assets; and whether either party unreasonable increased the time spent on the case.' " *Strickland v. Strickland*, 470 N.W.2d 832, 840 (S.D.1991)(quoting *Senger v. Senger*, 308 N.W.2d 395 (S.D. 1981)). Pamila's counsel has requested $14,518.96 in attorney's fees, sales tax, and costs in connection with this appeal. After consideration of the appropriate factors, including the central issue on appeal, this Court awards Pamila attorney fees in the sum of $7,250.[6]

## DECISION

[¶ 33.] Based upon the foregoing, we hold that the trial court erred in excluding the 56 acres of gifted property from marital property. The decision of the trial court is reversed and the case is remanded to the trial court to consider the 56 acres as marital property in connection with the equitable division of the property of the parties. We further award Pamila attorney fees of $7,250 in connection with this appeal.

[¶ 34.] GILBERTSON, Chief Justice, and SABERS, ZINTER and MEIERHENRY, Justices, concur.

[¶ 35.] GIENAPP, Circuit Judge, for KONENKAMP, Justice, disqualified.

---

6. Pamila's appellate counsel was not her trial counsel. In addition to considering the referenced factors this Court is also taking into consideration that increased time and cost occurs when new counsel appears on appeal which should not normally be the responsibility of the non-prevailing party.