#24730, #24738-a-DG

**2008 SD 99**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

MARISSA S. TERCA,                                   Plaintiff and Appellee,

  v.

JAMES J. TERCA,                                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
LYMAN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LORI S. WILBUR
Judge

\* \* \* \*

ROBERT C. RITER, JR.
MARGO D. NORTHRUP of
Riter, Rogers, Wattier & Northrup, LLP
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


ROSE ANNE WENDELL
Pierre, South Dakota                    Attorney for defendant
                                        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 26, 2008

OPINION FILED **10/22/08**

#24730, #24738

GILBERTSON, Chief Justice

[¶1.]       In this divorce proceeding, the circuit court evaluated real property inherited by James Terca, one-half before and one-half nine years into an eighteen-year marriage, and determined it was a marital asset.  The circuit court awarded Marissa Terca two parcels of the inherited land and other real property valued at $476,167.75 and James the remainder valued at over $1,000,000.00.  James appeals contending:  (1) Marissa made no contribution to the maintenance of the property, (2) the intent of the donor should have been more heavily considered, (3) Marissa had no need for the asset given her ability to earn an income, and (4) James's need for the assets was greater due to his inability to earn an income.  The circuit court is affirmed on the basis that its denial of spousal support was contingent on the property division.

**FACTS AND PROCEDURE**

[¶2.]       Marissa and James were married on November 25, 1989.  Three children were born during the marriage who were ages sixteen, thirteen, and ten at the time of the divorce proceedings.  The parties were married for eighteen years.  James was forty-nine and Marissa was forty-five when the divorce was finalized.

[¶3.]       Prior to the marriage, James operated a family farm in Lyman County, South Dakota, on land he inherited from his grandmother and grandfather.  James's father died a few months before the parties were married, and James eventually inherited the majority of the farmland owned by the parties at the time of the divorce proceedings.  James received one-half of his father's bequest of farmland at the time of his father's death, and the other half of the real property was kept in trust until James turned forty.  James farmed all the inherited land

-1-

during the marriage, paying rent to the trust for one-half of the inherited farmland until title transferred on his fortieth birthday.

[¶4.] The fair market value of the land, including the trust property, was $400,000.00 at the time James's father died. On the date of the divorce trial, the land was valued at $1,400,000.00 using a value of $750.00 per acre based on an appraisal conducted eighteen months prior to trial.

[¶5.] During the marriage, income from the farming operation was used for the upkeep and maintenance of the family. The farm income was commingled with marital monies and used to pay for marital property and service marital debts. The parties also purchased additional real property during the marriage. Notes against the farmland were maintained in the name of both parties.

[¶6.] Marissa was employed full-time with the Division of Criminal Investigation at the time of the marriage. Shortly thereafter, Marissa quit her outside employment at James's urging and became a stay-at-home mother and homemaker. Marissa was responsible for the care of the couple's children and the upkeep of the home. Marissa supplemented the family income by working various part-time jobs including substitute teaching and at a local flower shop. All of Marissa's income from her part-time jobs was deposited into a joint account with James and used to support the family.

[¶7.] During the course of the marriage, Marissa helped James with the farming operation by moving vehicles, vaccinating hogs, providing lunch for the hired workers, and running for parts among other tasks. Marissa was listed as an employee on tax returns during the marriage. Marissa also worked on the farm books, but her efforts to move the books to an electronic system were rejected by

James. At James's insistence, Marissa was not a decision-maker with regard to the farm operation.

[¶8.] In 2001, the parties jointly started a hunting guide service on their Lyman County real estate. Both were instrumental in starting the operation, but Marissa was principally involved with the operation. James minimized Marissa's contributions, testifying at trial that her role was to "flirt with the hunters."

[¶9.] Shortly before the parties married, James was diagnosed with multiple sclerosis (MS),[1] which was at that time recurring with physical effects experienced a few times a year. In 2004, James was diagnosed with secondary progressive MS. At the time of trial, he was considered disabled pursuant to the Social Security Administration's guidelines and his capacity to earn a living was diminished. James operated the farm until 2006 when health issues made it impossible to continue farming. James also suffered from depression and severe mood swings during the marriage.

[¶10.] At the time of the divorce proceedings, James was no longer farming. The farm equipment had been sold and the proceeds used to pay off the joint farm debt. The farmland was either rented out to James's brother or in the Conservation Reserve Program. James was receiving $1,552.00 per month in Social Security

---

1. Multiple sclerosis (or MS) is a chronic and often disabling disease that attacks the central nervous system which is made up of the brain, spinal cord, and optic nerves. Symptoms may be mild, such as numbness in the limbs, or severe, such as paralysis or loss of vision. http://www.mayoclinic.com/health/multiple-sclerosis/DS00188. (last visited September 12, 2008).

disability payments. Marissa was working at the Lyman County Herald making $9.50 per hour.

[¶11.]     The circuit court recognized that James's medical condition was expected to continue to deteriorate over time. While recognizing that James was a beneficiary of the Ohlson Trust and had a one-tenth interest in the trust, the circuit court excluded it from the marital estate due to the possibility that James might not live to receive a benefit from the trust. The individual with the life estate interest in the Ohlson Trust was ninety-seven (97) years old at the time of trial, and might utilize all or part of the asset during her lifetime. Although not valued for inclusion in the marital estate, the trial testimony placed the value of the trust at $850,000.00.

[¶12.]     The circuit court granted Marissa a decree of divorce on the grounds of extreme cruelty. Marissa was awarded custody of the minor children subject to the reasonable visitation rights of James. James was granted supervised visitation until such time as the children's counselor and James's counselor agreed supervision was no longer necessary. James was court ordered to attend counseling sessions for a minimum period of six months, or until his counselor agreed counseling was no longer necessary. James was also court ordered not to interfere with the children's counseling sessions. James was ordered to pay $431.00 in child support from his Social Security payments.

[¶13.]     The circuit court conducted the required analysis of the inherited property and concluded Marissa made more than a *de minimus* contribution to the maintenance of the real property. The circuit court found that Marissa's efforts as a

housewife and mother constituted a valuable contribution to the accumulation of marital property. Further, the circuit court found that the income from the farming operation was commingled with marital monies and then used to purchase marital property and pay marital debts. The circuit court concluded that Marissa's lack of control in the decision making on marital property, including the inherited farmland, did not support separate treatment of the asset.

[¶14.] The circuit court's analysis of Marissa's need for support recognized her ability to earn an income. The circuit court also concluded that Marissa had sufficient assets of her own such that she was not in need of spousal support. However, the circuit court also concluded that its division of the marital assets was a factor in determining that Marissa was not in need of spousal support. Without the allocation of the real property to Marissa, the circuit court found she could be forced to liquidate other assets allocated to her by the circuit court for her own support.

[¶15.] Marissa received title to two quarter sections, each valued at $120,000.00, that were originally inherited by James. Marissa also received real property purchased by the couple during the marriage consisting of one full quarter section valued at $120,000.00 and another parcel valued at $116,167.75. James received the balance of the inherited real estate, valued at slightly under $1,000,000.00. The value of the real property allocated to Marissa totaled $476,167.75, while James received land valued at $1,035,128.70. Marissa's application for reasonable attorney fees was denied by the circuit court.

[¶16.]    James raises the following issue on appeal:

> Whether the circuit court erred when it determined that real property inherited by James was part of the marital estate.

[¶17.]    By notice of appeal, Marissa raises the following two issues. Marissa raised the first issue and asked that it be considered only in the event this Court reverses the circuit court on the inclusion of James's inherited property in the marital estate. The second issue was also included in Marissa's prayer for relief and thus must be addressed regardless of whether this Court reverses the circuit court on the inclusion of inherited property in the marital estate:

> 1.    Whether the circuit court erred when it established the fair and reasonable value of the parties' real property using an eighteen-month-old appraisal.

> 2.    Whether the circuit court erred when it denied Marissa's application for reasonable attorney fees.

## STANDARD OF REVIEW

[¶18.]    A circuit court's division of marital property is reviewed under the abuse of discretion standard. Johnson v. Johnson, 2007 SD 56, ¶16, 734 NW2d 801, 806 (citing Grode v. Grode, 1996 SD 15, ¶6, 543 NW2d 795, 799). As this Court has noted on prior occasions:

> [O]ur purpose is not to determine "whether we would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion." The exercise of discretion by the "trial court must have a sound basis in the evidence presented." An abuse of discretion occurs when "discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence."

Miller v. Jacobsen, 2006 SD 33, ¶18, 714 NW2d 69, 76 (internal citations omitted).

A circuit court's ruling on the allowance or disallowance of costs and attorney fees is

also reviewed by this Court under the abuse of discretion standard of review. *Eccleston v. State Farm Mut. Auto. Ins. Co.*, 1998 SD 116, ¶20, 587 NW2d 580, 583 (citing *Fullmer v. State Farm Ins. Co.*, 498 NW2d 357, 363 (SD 1993)).

[¶19.] Findings of fact are reviewed by this Court under the clearly erroneous standard of review. SDCL 15-6-52(a). *Miller*, 2006 SD 33, ¶19, 714 NW2d at 76 (citing *Johnson v. Johnson*, 468 NW2d 648, 650 (SD 1991) (citing SDCL 15-6-52(a))). Only if this Court is left with a "definite and firm conviction that a mistake has been made" will it overturn a circuit court's findings. *Id.* (citing *Johnson v. Johnson*, 451 NW2d 293, 295 (SD 1990)).

## ANALYSIS AND DECISION

[¶20.] South Dakota Codified Law 25-4-44 authorizes circuit courts to equitably divide the marital estate in a divorce proceeding regardless of the ownership of the property. That statute provides:

> When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties.

SDCL 25-4-44. The allocation of property as marital or non-marital is guided by the following factors:

> (1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

*Novak v. Novak*, 2006 SD 34, ¶4, 713 NW2d 551, 552 (quoting *Billion v. Billion*, 1996 SD 101, ¶21, 553 NW2d 226, 232).

[¶21.] Property inherited by one of the spouses is properly excluded from the marital estate when two conditions are satisfied: the other "spouse has made no or *de minimis* contributions to the acquisition or maintenance of an item of property and has no need for support[.]" *Id.* ¶5, 713 NW2d at 552-53 (citing *Billion*, 1996 SD 101, ¶21, 553 NW2d at 232). Inherited property "is not ipso facto excluded" from the allocation under SDCL 25-4-44. *Id.* (citing *Billion*, 1996 SD 101, ¶20, 553 NW2d at 232). Furthermore, the intent of the donor, while a consideration, is not determinative. *Id.* (citing Godfrey v. Godfrey, 2005 SD 101, ¶19, 705 NW2d 77, 81).

[¶22.] James contends on appeal that the circuit court erred when it included the inherited property as a part of the marital estate. He argues that the devise of the land before the marriage and the ability of the farm to remain in the family weighed in favor of its exclusion. James also contends that Marissa had little, if any, involvement with the land, made little contribution to its improvement, and exercised no control over the land. He further argues Marissa's higher earning capacity and James's deteriorating health also weighed in favor of the land's exclusion from the marital estate. Finally, James claims his financial needs will likely increase over time due to his advancing MS and should have been a more significant factor that also weighed in favor of exclusion.

[¶23.] In its findings of fact, the circuit court considered all the factors cited in *Novak*. James's claim on appeal that all the land in the farming operation was inherited before the marriage is clearly an overstatement of the record. The circuit court noted that only half of the land was inherited outright by James before the marriage. The fact that a significant portion of the land inherited from his father

was received by James nine years into the marriage weighs in favor of its inclusion in the marital estate. *See* Halbersma v. Halbersma, 2007 SD 91, ¶17, 738 NW2d 545, 549 (land inherited thirty-one years into an over fifty-year marriage weighed in favor of its inclusion in the marital estate) (citing *Novak*, 2006 SD 34, ¶10, 713 NW2d at 554 (holding property inherited ten years into a sixteen-year marriage weighed in favor of its inclusion in the marital estate)).

[¶24.]     James next argues that Marissa made no contribution to the improvement of the inherited land. However, the circuit court found that James minimized Marissa's contributions to the farming and the hunting operations.

[¶25.]     This Court has consistently held that a homemaker's contribution to the family's upkeep is valuable and must be considered as no less significant and substantial to the accumulation of marital property than the other spouse's labor outside the home. *Billion*, 1996 SD 101, ¶30, 553 NW2d at 233 (citing Johnson v. Johnson, 471 NW2d 156, 160 (SD 1991)); Garnos v. Garnos, 376 NW2d 571, 573 (SD 1985) (citing O'Connor v. O'Connor, 307 NW2d 132 (SD 1981); Kittelson v. Kittelson, 272 NW2d 86 (SD 1978)). In addition, the Court has recognized that a spouse's indirect contributions to the improvement of an asset may also be considered in the division of assets. *Halbersma*, 2007 SD 91, ¶¶16-17, 738 NW2d at 549-50. An indirect contribution can occur when one spouse's work efforts allows the other spouse to maintain inherited property separately and avoid commingling assets that otherwise would be required for the support and maintenance of the family. *Id*. ¶¶17-19.

[¶26.] James's claim that Marissa made no or *de minimum* contributions to the improvement of the land is not supported by the record. The circuit court found Marissa's work as a homemaker and mother was a valuable contribution to the family's upkeep and to the accumulation of marital property, including the farmland. Marissa's contribution by running for farm parts, vaccinating livestock, feeding hired workers, doing the books, and working in the hunting guide business have been minimized and undervalued by James. The circuit court, however, viewed these contributions as more than *de minimus*. We can find no error, let alone clear error, in the circuit court's analysis of Marissa's contributions.

[¶27.] The circuit court also recognized James's deteriorating health would create additional financial needs in the future as he was unable to work in any capacity that generated an income due to his complete disability. However, the circuit court compensated for this factor when it provided James with a majority of the farmland from the marital estate. James received $1,035,128.70 in land compared to Marissa's $476,167.75 in land.

[¶28.] A circuit court is required to consider the allocation of property and spousal support together. Evans v. Evans, 1997 SD 16, ¶31, 559 NW2d 240, 247 (citing Kappenmann v. Kappenmann, 479 NW2d 520, 523 (SD 1992); Ryken v. Ryken, 461 NW2d 122, 127 (SD 1990)). The symbiotic relationship between property division and spousal support requires consideration of the two together, as an award of more assets can eliminate or reduce the need for spousal support and vice versa. Heckenlaible v. Heckenlaible, 1996 SD 32, ¶20, 545 NW2d 481, 485.

[¶29.] The record clearly shows that the circuit court did consider the allocation of property and spousal support together. The circuit court noted that while Marissa's ability to earn an income was excellent, it also concluded that it was unlikely she would be able to support herself without resorting to the liquidation of the other assets allocated to her. The circuit court conditioned the denial of spousal support on the allocation of sufficient assets from the marital estate. James brings forward no authority or facts in the record to suggest Marissa's current employment status at $9.50 per hour is sufficient to support her without the assistance provided by the distribution of farmland made by the circuit court.

[¶30.] We are not firmly convinced that the circuit court erred when it found the inherited farmland was part of the marital estate. We affirm the circuit court's inclusion of the inherited farmland in the marital estate, and the allocation of the two parcels of that inheritance to Marissa for the aforementioned reasons.[2] Because we affirm the circuit court on Issue 1, there is no need to address Marissa's first issue raised by notice of review.

[¶31.] **Whether the circuit court erred when it denied Marissa's application for reasonable attorney fees.**

---

2. James requested alternative relief from this Court, asking that Marissa not be awarded farmland inherited from James's family due to the fact that three generations of his family had farmed the land and the sentimental value James placed on the property. However, James failed to indicate in his brief which parcels were purchased and which parcels were inherited, and how to make the substitution. Without that information, it was impossible for this Court to consider his request and substitute purchased lands for the inherited lands while maintaining the $476,167.75 value allocated to Marissa by the circuit court.

[¶32.] "The award of costs in civil actions is discretionary with the court unless otherwise stated by law." *Eccleston*, 1998 SD 116, ¶20, 587 NW2d at 583 (citing *Fullmer*, 498 NW2d at 363). The circuit court found that Marissa incurred reasonable attorney fees and costs in excess of $35,000. However, it also found that both parties received substantial net worth and retained resources to pay their own attorney fees. This Court did not alter the distribution of marital property as originally made by the circuit court. Given that the parties retained sufficient assets and resources to pay their respective attorney fees, we are not persuaded the circuit court abused its discretion when it denied Marissa's application for reasonable attorney fees.

[¶33.] Marissa moved this Court for appellate attorney fees under SDCL 15-26A-87.3, for which we award her $3,000.00.

[¶34.] Affirmed.

[¶35.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.