#24924-aff in pt & rev&rem-KERN, Circuit Judge
**2009 SD 23**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CARLEEN ANN MUENSTER,                    Plaintiff and Appellee,

    v.

THEODORE ROOSEVELT MUENSTER,             Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT,
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE KATHLEEN K. CALDWELL
Judge

* * * *

MARY H. BURD
Burd Law Office                          Attorneys for plaintiff
Sioux Falls, South Dakota                and appellee.

MARK F. MARSHALL
Davenport, Evans, Hurwitz & Smith, LLP   Attorneys for defendant
Sioux Falls, South Dakota                and appellant.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 17, 2009

OPINION FILED 4/8/09

#24924

KERN, Circuit Judge

[¶1.]         Theodore Roosevelt Muenster (Ted) appeals from a judgment and decree of divorce granted to Carleen Ann Muenster (Carleen) challenging the trial court's division of property, the determination of child support and the finding that he was in contempt of court.  We affirm the property division and contempt finding and reverse and remand for recalculation of Ted's child support.

BACKGROUND

[¶2.]         Ted and Carleen were married on October 19, 1996.  At the time of the marriage, the parties were living in a home owned by Ted on St. Paul Street in Sioux Falls, South Dakota.  Carleen had obtained a bachelor's degree in business administration and was working for Specialized Card Services, earning $32,000 per year.  Ted had not yet earned his bachelor's degree and was working for his mother, Karen Muenster, maintaining her rental properties.  Ted had previously bought and sold several real properties in Sioux Falls.  In 1997, Ted completed his undergraduate degree and the parties' first child, Emily, was born September 14, 1997.

[¶3.]         In August 1998, the parties moved to Vermillion so Ted could pursue a law degree.  In October 1998, Carleen obtained a job at the law school in the Dean's Office, earning a salary of $32,000 per year and the job provided medical insurance for the children.  The parties lived with Carleen's mother for the first eight months.  The parties sold the house on St. Paul Street in Sioux Falls for approximately $79,000.  With the proceeds they paid off marital debts, including some of Ted's undergraduate expenses, and purchased two rental properties in Vermillion:  217 and 225 N. University (University) and 515 E. Clark (Clark) in which they resided.

The parties sold the University property to clear debt and purchased a duplex at 200 and 202 N. Pine Street (Pine). All the properties were titled jointly by the parties. The parties received about $2,000 per month in net income from the rental properties.

[¶4.]    The parties' second child, Alexander, was born October 22, 2000. Carleen enrolled in graduate school in 2001. Ted graduated from law school in 2003, and elected not to take the bar exam but continued to manage the rental property on Pine Street and work with his mother in real estate ventures. In 2003, the parties moved to Sioux Falls as Carleen obtained a paid internship at "West Central" as a counselor. The parties lived rent-free in a furnished home located on Harriet Lee belonging to Ted's parents. The parties' third child, Olivia, was born January 1, 2004. Carleen obtained her master's degree in the spring of 2004.

[¶5.]    As the couple now had three small children, they decided Carleen should remain at home with the children. Alex had ADHD and she began home schooling him. Ted worked at Wells Fargo and Home Depot, earning between $10 and $13 per hour. He later obtained employment as the director of the Chiesman Foundation at a salary of $38,000 per year. His position was eliminated after three months and he collected unemployment benefits for eight months. Ted obtained his real estate license and worked at Century 21 but never sold a house.

[¶6.]    On June 13, 2007, Carleen filed for divorce, interim custody of the parties' children, child support and interim spousal support. At the time of the divorce proceeding, Carleen was unemployed and Ted indicated he was working full

time as a real estate agent and managing the rental properties the parties owned in Vermillion. Their only income was the $1,300 per month they were now receiving as net income from the rental properties. The trial court ordered Ted to pay Carleen her one-half share of the rental income ($650) and the court ordered both parties to obtain employment. Carleen promptly obtained employment with Capital Card Services at a salary of $47,705 per year.

[¶7.]    On August 16, 2007, Carleen filed motions to compel answers to interrogatories, to hold Ted in contempt for failing to pay the $650 per month and for modification of support. A hearing was held on September 24, 2007, at which time the parties agreed that the answers to interrogatories had been received and that the accounting regarding the rental income would be produced in two weeks. Prior to the hearing, Ted satisfied the child support arrearages generated by the court's prior order of $650 per month. The trial court ordered Ted to immediately seek gainful employment and ordered that the remaining $650 in equity from the parties' rentals would be given to Carleen to assist with her child care expenses, which now exceeded $840 per month, and as temporary support. The court also ordered that on or before October 8, 2007, Ted would comply with Carleen's discovery request to provide a full accounting of the rental income received.

[¶8.]    On October 31, 2007, Carleen filed a second motion seeking to have Ted held in contempt of court for failing to comply with the court's order directing him to produce the financial information and for failing to pay 100 percent of the rental income to Carleen.

[¶9.] A hearing was held on December 10, 2007, and counsel for the parties again agreed that an accounting of the rental income would be made within two weeks to Carleen's counsel. Counsel also obtained clarification from the court regarding the September 24, 2007, order which provided that Ted would pay Carleen 100 percent of the net income from the rental property.

[¶10.] On December 12, 2007, Karen Muenster delivered to the sheriff a notice to quit and vacate the property at 2304 Harriet Lee, thereby beginning eviction proceedings against Carleen and the children who were still residing in the Muenster residence. Carleen vacated the property voluntarily and obtained an apartment for herself and the couple's three children. On January 8, 2007, Karen Muenster filed mechanic's liens totaling $44,910 against the Pine Street property ($33,563) and against the Clark Street property ($11,347) for taxes paid, repairs, improvements and property management fees beginning in 2002 and ending December 31, 2007. At the time of the divorce, the Clark Street property was valued at $70,152 and had a mortgage of $60,185. The Pine Street property was valued at $109,087 and had a mortgage of $70,496. The parties' combined equity in both properties was $48,558. Thus, the mechanic's liens were nearly equal to the parties' equity in the two properties.

[¶11.] The case proceeded to a trial before the court on March 6, 2008. At trial, Ted testified and produced some evidence that he brought into the marriage approximately $177,000 in premarital assets obtained from the sale of several properties he had purchased prior to marriage and the proceeds from the sale of the St. Paul Street residence in Sioux Falls in 1998. Carleen testified that Ted had not

paid her the $1,300 per month ordered by the court. Ted testified that he was working for his brother but not receiving any income. He also testified that the expenses on the rentals had increased and that they were now only netting $650 per month.

[¶12.] The trial court awarded the parties' only income producing property, the Vermillion rentals, to Carleen and set Ted's child support at $1,000 per month. The court held Ted in contempt of court for failing to comply with the court's October order requiring Ted to pay Carleen $1,300 per month. The court also found that Ted colluded with his mother in the filing of the mechanic's liens to tie up the parties' equity in the property. The court determined the liens were not filed in good faith and ordered Ted to pay Carleen's attorney's fees associated with her defense of the mechanic's liens and to reimburse Carleen for the equity in the properties if the liens were upheld.

[¶13.] On appeal, Ted raises the following issues:

Whether the trial court abused its discretion in dividing the marital estate?

Whether the trial court erred in determining the amount of child support by imputing a prior income?

Whether the trial court erred in its finding of contempt of court?

STANDARD OF REVIEW

[¶14.] On appeal a trial court's division of property and award of child support is reviewed using an abuse of discretion standard. Billion v. Billion, 1996 SD 101, ¶ 14, 553 NW2d 226, 230 (citations omitted). "Abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against,

reason and evidence." Godfrey v. Godfrey, 2005 SD 101, ¶ 11, 705 NW2d 77, 80 (citing Pellegrin v. Pellegrin, 1998 SD 19, ¶ 10, 574 NW2d 644, 646). The correct inquiry "is not whether we would have made the same ruling, 'but whether a judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.'" *Id.* (quoting DeVries v. DeVries, 519 NW2d 73, 75 (SD 1994)).

[¶15.]        "We review a trial court's findings as to contempt under a clearly erroneous standard." Driscoll v. Driscoll, 1997 SD 113, ¶ 10, 568 NW2d 771, 773 (citing Taecker v. Taecker, 527 NW2d 295, 298 (SD 1995)).

ANALYSIS AND DECISION

Division of Property

[¶16.]        "South Dakota Codified Law 25-4-44 authorizes [trial] courts to equitably divide the marital estate in a divorce proceeding." Terca v. Terca, 2008 SD 99, ¶ 20, 757 NW2d 319, 325. "All property may be divided, regardless of its title or origin." Christians v. Christians, 2001 SD 142, ¶ 13, 637 NW2d 377, 381 n1 (citing Radigan v. Radigan, 465 NW2d 483, 486 (SD 1991)). This includes property with premarital origins. Strickland v. Strickland, 470 NW2d 832, 836 (SD 1991)(noting that "[t]his Court has consistently held that the trial court has discretion in determining how to consider premarital assets")(citation omitted). A court is not required to "give both divorcing parties credit for all their premarital assets in order to make an equitable division of property." *Pellegrin*, 1998 SD 19, ¶ 19, 574 NW2d at 648.

[¶17.]     Ted first contends that the trial court abused its discretion when it deemed the Vermillion rental properties part of the divisible marital estate. His assertion is premised on the fact that the properties were purchased with proceeds from the sale of his premarital property and that Carleen did not contribute financially to the acquisition of the Vermillion rentals or their management. Ted testified that he entered the marriage with a net worth of $177,000. During trial, however, it became clear that this figure was somewhat inflated. Ted reported capital gains of $10,000 on his tax returns in 1996 and $34,500 in 1997. The parties sold the unmortgaged St. Paul Street residence in 1998 for $79,000 when they moved to Vermillion. The parties used these funds to pay living expenses and debts and to purchase the Vermillion rental properties which they titled jointly in their names. Although Carleen did not have premarital funds to contribute to purchase the properties, her valuable contributions to the acquisition and maintenance of the properties may not be ignored. Courts are directed to consider a party's indirect contributions, especially where, as here, one spouse's efforts permit the other spouse to acquire and maintain property with "assets that otherwise would be required for the support and maintenance of the family." *Terca*, 2008 SD 99, ¶ 25, 757 NW2d at 326. "Only in the case where one spouse has made no or de minimis contributions to the acquisition or maintenance of an item of property and has no need for support, should a court set it aside as non-marital property." *Billion*, 1996 SD 101, ¶ 21, 553 NW2d at 232.

[¶18.]     Carleen earned $32,000 per year in 1996 and 1997. In 1998, she worked for the Dean of the Law School and again earned $32,000 per year while

Ted attended and completed law school. She also provided primary care for the parties' children and maintained the household. Carleen's consistent income and contributions as mother and wife were substantial, well beyond de minimis and, thus, the property was appropriately considered marital property subject to equitable division.

[¶19.] In making an equitable division of property, "there is no rigid formula that must be followed, nor any fixed percentage to which either party is entitled." Clement v. Clement, 292 NW2d 799, 801 (SD 1980)(internal citations omitted). However, "[w]e have identified certain factors for a trial court to consider when dividing marital property." Novak v. Novak, 2006 SD 34, ¶ 4, 713 NW2d 551, 552. These include: "(1) the duration of the marriage; (2) the value of the property owned by the parties; (3) the ages of the parties; (4) the health of the parties; (5) the competency of the parties to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets." *Id.* (citing *Billion*, 1996 SD 101, ¶ 21, 553 NW2d at 232).

[¶20.] The trial court considered each of the required factors and awarded Carleen the Vermillion properties. Ted claims that the trial court's consideration of the factors was precursory and that the award of all income earning property to Carleen was an abuse of discretion. At the time of trial both parties were 42 years of age and in good health. Ted had suffered from a thyroid condition which was under control and not an impediment to employment.

[¶21.] "The trial court is clearly authorized and directed to consider the contribution of each party to the accumulation of assets" when dividing marital property. Korzan v. Korzan, 488 NW2d 689, 692 (SD 1992). As determined by the trial court, Carleen's contribution to the parties' accumulation of assets was substantial. She worked full time for all but three years of the parties' marriage, enabling Ted to finish his undergraduate degree and attend and graduate from law school. Her efforts also assisted him in managing the couple's Vermillion properties. Carleen's employment ended only after the parties' agreed that she would stay home with the children. This shift did not lessen her contributions to the marital estate. Instead, as this Court has repeatedly concluded, the duties of mother and homemaker "constitute a valuable contribution to marital property." *Billion*, 1996 SD 101, ¶ 30, 553 NW2d at 233 (quoting Johnson v. Johnson, 471 NW2d 156, 160 (SD 1991)).

[¶22.] In contrast, despite a law degree and a real estate license, Ted maintained formal employment for approximately one year of the parties' ten-year marriage. His contributions were made through the management of the rental properties. (However, Ted's mother testified she was significantly involved in the management of the properties since 2001.) Despite the fact both parties have similar earning potential due to their advanced degrees, Ted has been and remains chronically under-employed. At trial, Ted testified that he currently works for his brother renovating buildings, receives no income and lives with him rent free. He estimated the value of the compensation received from his brother at $10 to $12 per hour. Ted testified that he could not pay Carleen the $1,300 per month rental

income from the Vermillion properties because the expenses for the properties had increased and thus the net income was now only $650 per month. This was not established by the evidence at trial and the court found him in contempt.

[¶23.] Carleen and the three children were left in a precarious situation as a result of the divorce. As Ted and Carleen were living in a furnished home belonging to Ted's parents at the time of the divorce, her subsequent eviction left her with no home or furniture and uncertain support from Ted. Her daycare expenses alone for three children exceeded $840 per month. From this set of facts, the trial court determined that, notwithstanding Carleen's higher income, an unbalanced property division was necessary to provide adequate assets and a reliable source of support for Carleen and the children. This type of analysis is not entirely unprecedented. For example, in *Morrison v. Morrison*, we concluded that "the trial court was justified in awarding [the] appellee a substantial share of the assets to put her in a stable financial condition" in part because of "appellant's unreliability in repaying a loan from the appellee and his failure to maintain child support payments." 323 NW2d 877, 879 (SD 1982).

[¶24.] In addition to the aforementioned factors, courts are also permitted to consider a party's intentional depletion of a marital asset when making an equitable division of property. *See, e.g., Johnson,* 471 NW2d at 161 (finding that if a "husband fraudulently dissipated marital assets, they should be included in the marital estate and charged against him"). The trial court, in the present case, concluded that the mechanic's liens filed by Ted's mother were not filed in good faith and were initiated to deprive Carleen of any equity in the Vermillion

properties. The court ordered Ted to pay the legal fees incurred in the defense of the lien claims and to assume any debt owed to his mother. Ted alleges that the mechanic's liens against the Vermillion properties were improperly considered and that the order was improper.

[¶25.]    The trial court based its finding of fraud largely upon the testimony of Ted and his mother. "Trial courts are [] required to determine the credibility of witnesses that testify." Grode v. Grode, 1996 SD 15 ¶ 21, 543 NW2d 795, 801 (internal citation omitted). The trial court had the opportunity to judge the credibility of those before it and found Ted and his mother not credible. This finding is afforded due regard and will not be interfered with on appeal. *Id*. The trial court noted that Ted, despite holding a law degree, made no answer to the suit and testified that, although the parties were both named as defendants, he thought Carleen could answer for him as well. The court found that he acquiesced in the filing of the liens by his mother to deprive Carleen of any equity in the properties and thereby perpetrated a fraud upon the court. The court considered the filing of the liens to be a "deliberate attempt to make an end run around an equitable division of property in this divorce case." The court also found that the mechanic's liens had little likelihood of prevailing at trial given that they were not timely filed and that the alleged agreement between Ted and his mother for the payment of a management fee and taxes was not made in writing. The trial court did not render judgment on the validity of the liens but rather, after determining the liens were brought in bad faith, issued orders to protect Carleen's equity in the property. Such consideration is within the ambit of a trial court charged with dividing the marital

estate in an equitable manner. *See, e.g.*, Pennock v. Pennock, 356 NW2d 913, 915 (SD 1984)(noting that a party's transfer of properties "appear suspect in the way that they were" made, in part because they were concluded "shortly before the divorce trial[,] made with inadequate documentation[, and] were transfers to blood relatives").

[¶26.] The trial court was faced with determining what was equitable under these unique circumstances. In light of Carleen's substantial contributions, Ted's inconsistent support and his attempt to deplete the Vermillion properties' value, we cannot conclude that the division of property was inequitable. The trial court's division of property is affirmed.

Child Support

[¶27.] "The statutory scheme in SDCL Chapter 25-7 governs child support calculations" and sets forth a procedure "wherein the initial step is to determine the current net income of the parties and scheduled support amount." Kauth v. Bartlett, 2008 SD 20, ¶¶ 11, 13, 746 NW2d 747, 751. Only after this step is completed may a deviation, under SDCL 25-7-6.2, enter into the child support obligation computation. *Id.* ¶ 12. This "procedure for child support calculation is mandatory." Hollinsworth v. Hollinsworth, 2008 SD 102, ¶ 15, 757 NW2d 422, 427 n6 (citing *Kauth*, 2008 SD 20, ¶ 13, 746 NW2d at 751).

[¶28.] Ted argues that the appropriate procedure was not followed. Carleen submitted a proposed child support calculation imputing Ted's yearly wages at $42,000, which produced a base support obligation of $777.38. With additions for health insurance and daycare expenses, she requested monthly support in the

amount of $1,215.89. The trial court noted Ted's education and prior employment at $38,000 per year and set his support at $1,000 per month without performing a calculation based on his actual earnings. Carleen's income was calculated without consideration of income received from the rentals.

[¶29.]     In *Kauth*, the obligor voluntarily took a lower paying job and the referee utilized his previous wages when calculating child support. *Kauth,* 2008 SD 20, ¶ 2, 746 NW2d at 749. In that case, we noted that the language of South Dakota's statutory scheme governing child support calculations "does not authorize automatically imputing a higher income when someone voluntarily takes a lower paying job." *Id*. ¶ 11. The only statute which addresses imputing income to an obligor is SDCL 25-7-6.4, which merely creates a rebuttable presumption that a parent is *capable* of being employed at minimum wage." *Id*. (emphasis in original).

[¶30.]     A proper application of the statutes in this case requires the trial court to calculate Ted's monthly child support based on his actual earnings. The parties' net monthly income is then combined to determine the appropriate support obligation. Only after these calculations have been performed may the trial court consider any deviation requested by the parties pursuant to SDCL 25-7-6.10.

[¶31.]     Ted filed his notice of appeal on June 17, 2008. On June 16, 2008, Carleen filed a motion for an order establishing custody, visitation and child support pending appeal. A hearing on the motion was held on August 4, 2008, and the trial court entered an order again setting child support at $1,000 and authorizing the defendant to have his child support directly reviewed by filing a petition for modification without showing any change in circumstances. Ted

petitioned for a modification of the child support order and the matter was heard by a referee. Ted filed a motion with this Court, pursuant to SDCL 15-26A-56 to supplement the record on appeal to include the report issued by the referee which adjusted Ted's child support.

[¶32.]     "An appeal from a judgment or order strips the trial court's jurisdiction over the subject matter of the judgment or order except as to certain trivial matters." Reaser v. Reaser, 2004 SD 116, ¶ 28, 688 NW2d 429, 437 (citations omitted). Trial courts are "restrained from entering any order that would change or modify the judgment on appeal or have the effect of interfering with review of the judgment." *Id*. Therefore, the trial court improperly referred the matter to a referee who, in the present case, did not have jurisdiction to consider Ted's child support obligation during the pendency of the appeal.[1]

[¶33.]     The trial court, when calculating Ted's child support, failed to follow the procedures mandated by statute and articulated by this Court. Therefore, the award of child support is reversed and remanded for recalculation in compliance with the child support guidelines and consideration of any deviations requested by the parties. Accordingly, Ted's motion to supplement the record is denied.

Contempt

[¶34.]     The trial court found that Ted had willfully and contumaciously disobeyed its order to pay interim support in the amount of $1,300 per month and found him in contempt. Ted alleges that the trial court failed to consider whether

---

1.     If a change in circumstances occurred that necessitated review of a child support order which was the subject of an appeal, a party could move this Court for an order of partial remand to have that issue returned to the trial court for consideration.

-14-

he had the actual ability to comply with the order and requests that the finding of contempt be vacated.

[¶35.] The four elements of contempt are (1) existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order. *Johnson*, 451 NW2d at 295 (citing Thomerson v. Thomerson, 387 NW2d 509 (SD 1986); Hanisch v. Hanisch, 273 NW2d 188 (SD 1979)). A party cannot be held in contempt if he or she did not have the ability to pay in compliance with a court's order. Mundlein v. Mundlein, 2004 SD 25, ¶ 7, 676 NW2d 819, 822 (quoting *Johnson*, 451 NW2d at 295). However, "[w]hen the defense is inability to pay, the burden shifts to the defendant to establish his inability to comply with the court's order." *Johnson*, 451 NW2d at 295 (citations omitted). This requires a complete and detailed financial position statement for the court's review. Lampert v. Lampert, 388 NW2d 899, 903 (SD 1986). "Self serving testimony alone is insufficient and corroboration is necessary to establish a defense that a party cannot pay child support." Sazama v. State *ex rel.* Muilenberg, 2007 SD 17, ¶ 20, 729 NW2d 335, 343 (citations omitted).

[¶36.] In August 2007, Carleen and her counsel filed a motion to compel the production of information regarding the rental receipts and expenditures. A hearing was held on September 24, 2007, at which the court ordered Ted to provide by October 8, 2007, a full accounting of the rental income received and expenditures of monies from the rental income. The accounting was not produced and on October 31, 2007, Carleen filed a second motion seeking to hold Ted in contempt. At a hearing held on December 10, 2007, Ted again agreed to provide the accounting

within two weeks. At the March 6, 2008, trial, Ted introduced Exhibit K, a three-page handwritten document listing partial expense and income information for January through March. This exhibit and his testimony was the only proof offered regarding his alleged inability to comply, which the trial court did not find credible. Because he "failed to provide the trial court with a complete detailed financial position, his ability or inability to pay is impossible to determine." *Lampert*, 388 NW2d at 903. Ted's contention that he could not pay the support as ordered was simply unsupported by the evidence. Therefore, the trial court did not err when it concluded that Ted was in willful and contumacious disobedience of the order and the finding of contempt is affirmed.

## Attorney's Fees

[¶37.]      Both parties have petitioned the court for an award of attorney's fees generated as a result of this appeal. Ted's request for attorney's fees is denied. Carleen is awarded two-thirds of her requested fees in the amount of $3,183.00.

[¶38.]      GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.

[¶39.]      KERN, Circuit Judge, for MEIERHENRY, Justice, disqualified.